UNITED STATES of America, Appellee,

v.

Maurice B. FRANK, etc., Appellant.

No. 78–1278.

United States Court of Appeals,
Eighth Circuit.

Submitted Sept. 15, 1978.

Decided Dec. 4, 1978.

Rehearing Denied Dec. 26, 1978.

J. Christopher Kohn, Atty., Commercial Litigation Section, Civ. Div., Dept. of Justice, Washington, D. C., for appellee; Leonard Schaitman, Atty., Dept. of Justice, Barbara Allen Babcock, Asst. Atty. Gen., Washington, D. C., and Robert D. Kingsland, U. S. Atty., St. Louis, Mo., on the brief.

Before GIBSON, Chief Judge, and ROSS and HENLEY, Circuit Judges.

GIBSON, Chief Judge.

The United States, on behalf of the United States Department of Housing and Urban Development (hereinafter referred to as HUD) brought suit in the United States District Court for the Eastern District of Missouri as mortgagee of the Mansion House Center project, an apartment and motor hotel complex on the St. Louis, Missouri, riverfront, to ask for appointment of a receiver and to recover for improper diversion of funds derived from the operation of the project.

The project consists of three separate towers, and each tower is owned by a limited partnership. At all times relevant to these proceedings, Maurice Frank was the individual general partner of each of the three limited partnerships. In 1964, the financing of the project was arranged, whereby the United States, represented by the Commissioner of the Federal Housing Administration, agreed to insure three loans valued at approximately $12 million

each, issued to the three owning limited partnerships of the Mansion House Center. The general and limited partners of the project were absolved from personal liability for the loans, but deeds of trust incorporating certain regulatory agreements [1] concerning the operation of the complex were executed to protect the security interests of the mortgagees and the insurer. These agreements placed personal responsibility upon the partners for compliance with the terms of the agreements.[2] In 1972, after the mortgagors had defaulted upon all three loans, HUD paid the original lender; the lender assigned its interest in the notes and deeds of trust to the Secretary of HUD who had guaranteed the loans. HUD thus became the owner of the security. Thereafter an audit disclosed numerous violations by the mortgagor partnerships of their obligations under the deeds of trust.

In this action for breach of the regulatory agreements contained in the deeds of trust, the United States sought, *inter alia*, to recoup from the individual general partner of the mortgagor partnerships, Maurice Frank, certain monies of the project allegedly expended in violation of the regulatory agreements. The District Court [3] granted partial summary judgment of $898,249.01 against Frank in favor of the Government. Frank appeals from portions of this judgment.[4] We affirm.

Frank's first objection to the summary judgment concerns the District Court ruling that Frank is liable for repayment of certain attorney fees. Although Frank does not contest his liability with regard to all attorney fees in the record, he asserts that summary judgment was inappropriate because the record did not separate the fees he alleges were legitimately paid from those which he admits paying in violation of the regulatory agreements. In particular, Frank claims that the regulatory agreements authorized the use of project funds to pay the legal fees related to the mortgagor partnerships' effort to enjoin foreclosure of the mortgages and the fees related to the defense of a lawsuit challenging the conversion of the south tower into a hotel because these services were performed in connection with the operation of the project.

■ After the assignment of the notes and deeds of trust, HUD entered into forebearance agreements with each of the mortgagor partnerships, rather than exer-

---

1. The portions of the regulatory agreement relevant to this appeal provide:

     6. Owners shall not without prior written approval of the Commissioner:
     (a) Convey, transfer, or encumber any of the mortgaged property, or permit the conveyance, transfer or encumbrance of such property;
     (b) Assign, transfer, dispose of, or encumber any personal property of the project, including rents, or pay out any funds except from "surplus cash," except for reasonable operating expenses and necessary repairs;
            *     *     *     *     *     *
     (d) Remodel, add to, reconstruct, or demolish any part of the mortgaged property or subtract from any real or personal property of the project;
            *     *     *     *     *     *
     (f) Engage, except for natural persons, in any other business or activity, including the operation of any other rental project, or incur any liability or obligation not in connection with the project.
            *     *     *     *     *     *
     9. (g) All rents and other receipts of the project shall be deposited in the name of the project in a bank, whose deposits are insured by the F.D.I.C. Such funds shall be withdrawn only in accordance with the provisions of the agreement for expenses of the project or for distribution of surplus cash. *  *  *

2. Specifically, paragraph 17 of the agreements provided that the owners:

     do not assume personal liability for payments due under the note and mortgage, or for the payments to the reserve for replacements, or for matters not under their control, provided said Owners shall remain liable under this Agreement only with respect to the matters hereinafter stated; namely:
     (a) for funds or property of the project coming into their hands which, by the provisions hereof, they are not entitled to retain; and
     (b) for their own acts and deeds or acts and deeds of others which they have authorized in violation of the provisions hereof.

3. The Honorable John F. Nangle, United States District Judge, Eastern District of Missouri.

4. The District Court certified the judgment against Frank as a final judgment pursuant to Fed.R.Civ.P. 54(b).

cise its right to foreclose. Because the terms of these agreements had been violated, on April 11, 1975, HUD terminated the agreements and demanded that the three notes be brought current. The mortgagor partnerships brought suit against HUD challenging the termination of the agreements and seeking to enjoin foreclosure of the mortgages. *Mansion House Center North Redevelopment Corp. v. Hills*, No. 76–90C(A) (E.D.Mo., dismissed March 1, 1976). Frank authorized payment of substantial amounts of project funds as fees to various law firms for services rendered in connection with the administrative dispute regarding HUD's termination of the agreements and the lawsuit challenging the termination of the agreements and seeking to enjoin foreclosure. The District Court properly determined that these legal services were not incidental to the operation or maintenance of the project but were related to the personal investment interests of the mortgagor partnerships. The regulatory agreements authorized disbursements for "reasonable operating expenses." A proper construction of this provision requires distinguishing expenses incurred primarily on behalf of the personal interests of the investors from those expenses related to the everyday operation of the enterprise. *See Thompson v. United States*, 408 F.2d 1075, 1079–80 (8th Cir. 1969).

Frank also authorized the use of project funds to pay attorney fees in connection with the defense of a suit brought by competing hotel interests to contest the conversion of the south tower into a hotel.[5] In 1974, HUD approved a plan, proposed by Frank, to convert the south tower into a Holiday Inn Motor Hotel. In accord with this plan, Frank formed a limited partnership named the Mansion House Motor Hotel Company[6] to take charge of this operation as the lessee. Thereafter, competitor hotel owners filed a lawsuit against the owners of the south tower and the Secretary of HUD. Aside from the claims against HUD, the competitors charged that the private defendants had made misrepresentations to HUD and that the conversion action violated Missouri law and ordinances of St. Louis.

Although the attorney fees paid by Frank regarding this suit could have related to the misrepresentation charge or the charge of violation of State and City law,[7] in either event, the regulatory agreements prohibited the use of project funds for their payment. Fees related to the misrepresentation charge concerned the personal culpability of the individual defendants. These fees cannot be considered operating expenses of the project. The individual defendants should have paid the counsel costs relative to their personal defense. The fees related to the asserted violation of law were not expenses of the project because the Mansion House Motor Hotel Company was obligated to pay them. The south tower lease agreement placed upon the lessee the responsibility for the legality of the conversion to a hotel.[8]

---

5. *Rodeway Inns of America, Inc. v. Frank*, 541 F.2d 759 (8th Cir. 1976), *cert. denied*, 430 U.S. 945, 97 S.Ct. 1580, 51 L.Ed.2d 792 (1977).

6. Frank was the individual general partner of this limited partnership also.

7. Frank does not claim to have authorized the use of project funds to pay attorney fees incurred on behalf of HUD.

8. The conversion plan, as approved by HUD, and the lease agreement provided that the motor hotel company would finance the conversion. Section 8 of the lease agreement specifically addressed the issue of costs arising from failure to comply with laws and ordinances:

> SECTION 8. *Requirements of Public Authority*

(a) During the term of this lease, Tenant shall, at its own cost and expense, promptly observe and comply with all present and future laws, ordinances, requirements, orders, directives, rules and regulations of the Federal, State, County, Town, Village and City Governments and of all other governmental authorities affecting the Premises or appurtenances thereto or any part thereof whether the same are in force at the commencement of the term of this lease or may in the future be passed, enacted or directed, and Tenant shall pay all costs, expenses, liabilities, losses, damages, fines, penalties, claims and demands, *including reasonable counsel fees*, that may in any manner arise out of or be imposed because of the failure of Tenant to comply with the covenants of this Section 8. (b) Tenant shall have the right to contest by appropriate legal proceedings diligently con-

The regulatory agreements clearly prohibited use of project funds to pay the debts of a separate company.

■ Since Frank has not shown that any of the attorney fees were legitimately paid from project funds, he has failed to show the existence of a factual dispute that would preclude summary judgment. The Government presented evidence that project funds were used to pay certain law firms for services rendered not on behalf of the project. In order for Frank to successfully oppose the Government's motion with regard to only a portion of the fees paid, he was obliged to come forward with evidence that fees were allocable to specific services rendered on behalf of the project. He has not met this burden.

■ Frank also contests the District Court's holding with regard to certain motor hotel conversion expenditures and fees paid to a management company after its contract with the project had been terminated by HUD. The plans for conversion of the south tower into a motor hotel, as approved by HUD, provided that the lessee would be responsible for the conversion expenditures, and the lease agreement with the Mansion House Motor Hotel Company specifically placed responsibility for these expenditures upon the lessee.[9] Frank admits that he authorized payments out of project funds related to carpeting, painting, architect's fees, and other general conversion expenditures but contends that some of the payments to prepare the building for a

hotel should be considered payments for maintenance.

On July 1, 1975, HUD exercised its right under the regulatory agreements to terminate the management agreements then existing between each of the mortgagor partnerships and Remsco Management, Inc.[10] Notwithstanding this termination, the mortgagor partnerships continued to pay monthly management fees to Remsco. After the termination, the management personnel continued at their jobs and were paid directly by the project. Remsco performed no independent services.

The arguments of Frank with regard to these payments are without merit. Clearly, both the conversion expenditures and the fees to the management company were not obligations of the project. These expenditures of project funds violated the explicit provisions of the regulatory agreements providing for withdrawal of funds only "for expenses of the project" and proscribing paying out any funds "except for reasonable operating expenses and necessary repairs." *Thompson v. United States*, 408 F.2d 1075, 1080 (8th Cir. 1969).

■ Lastly, Frank contends that the provisions of the regulatory agreements conflict and that resolution of this conflict leads to an interpretation whereby the challenged expenditures are authorized. This argument was not advanced in the proceedings below. We will not consider it for the first time on appeal. *United States v. Li-*

ducted in good faith, in the name of the Tenant, or Landlord (if legally required), or both (if legally required), without cost or expense to Landlord, the validity or application of any law, ordinance, rule, regulation or requirement of the nature referred to in paragraph (a) of this Section 8 and, if by the terms of such law, ordinance, order, rule, regulation or requirement, compliance therewith may legally be delayed pending the prosecution of any such proceedings, Tenant may delay such compliance therewith until the final determination of such proceeding. (c) Landlord agrees to execute and deliver any appropriate papers or other instruments which may be necessary or proper to permit Tenant so to contest the validity or application of any such law, ordinance, order, rule, regulation or requirement and to fully coop-

erate with Tenant in such contest. [Emphasis added.]

9. Section 7 of the lease agreement provided that the "Tenant shall have the right, at its own expense, to make such improvements, [repairs] and alterations to the Premises as are appropriate for the operation of the Premises as a Holiday Inn." This same section limited the landlord's responsibility for maintenance to "the roof, foundation and the structural soundless of the walls of the buildings and improvements now erected on the Premises."

10. Remsco Management, Inc., an Ohio corporation wholly owned and controlled by Frank, acted as management agent for the projects until the termination by HUD.

brach, 536 F.2d 1228, 1231 (8th Cir.), *cert. denied*, 429 U.S. 939, 97 S.Ct. 354, 50 L.Ed.2d 308 (1976); *American General Finance Corp. v. Parkway Bank and Trust Co.*, 520 F.2d 607, 608 (8th Cir. 1975); *Hinton v. CPC International, Inc.*, 520 F.2d 1312, 1314 (8th Cir. 1975).

We conclude that the District Court properly granted the Government's motion for partial summary judgment. Frank authorized the use of project funds for expenditures that were in clear violation of the regulatory agreements. Frank did not establish the existence of any genuine issue of fact and the District Court applied correct principles of law.

The partial summary judgment is affirmed.