**In re EES LAMBERT ASSOCIATES, an Illinois limited partnership, Debtor.**

**Bankruptcy No. 84 B 591.**

United States Bankruptcy Court, N.D. Illinois, E.D.

Oct. 29, 1984.

John H. Mahoney, Associate Regional Counsel, Dept. of Housing and Urban Development, Chicago, Ill., Mary Anne Mason, Asst. U.S. Atty., N.D. Ill., Chicago, Ill., for the United States.

Sheldon Solow, Schwartz & Freeman, Chicago, Ill., trustee.

David Missner, Chicago, Ill., for debtor.

*Memorandum and Order*

ROBERT D. MARTIN, Bankruptcy Judge.

The United States on behalf of the Secretary of Housing and Urban Development has requested that this court compel debtor, EES Lambert Associates, an Illinois limited partnership, to restore certain funds to the debtor's estate which EES Lambert paid, pre-petition, as legal fees.

EES Lambert is the owner of certain real estate in Justice, Illinois known as the Lambert Quarter Apartments, compromised of 12 residential apartment buildings having 286 apartments. HUD is the holder of a perfected first mortgage on the apartments. EES Lambert is in default and owes HUD as of February 1, 1984, $5,503,-430.63.

During the period commencing in May, 1983 and ending January 11, 1984, EES Lambert paid the law firm of Hannafan & Handler legal fees in the amount of $20,500 for services in connection with the defense of a suit brought by HUD against EES Lambert to foreclose the mortgage. On January 17, 1984, it paid the law firm of Schwartz & Freeman a $25,000 retainer for services in connection with this chapter 11 petition. The retainer was disclosed on the filing of the petition and was of record when the court approved the employment of counsel in this case on February 6, 1984.

In 1971 the American National Bank and Trust Company of Chicago, trustee under trust no. 75501001, borrowed $4,594,100 from Bell Federal Savings and Loan Association for the building of these apartments. The mortgage loan was insured by the Department of Housing and Urban Development as authorized by the National

Housing Act (12 U.S.C. § 17151). After default Bell Federal assigned the mortgage note and other documents to the Secretary of HUD. The United States subsequently instituted foreclosure proceedings. On October 27, 1983, District Judge Getzendanner found the unaccelerated delinquency on the mortgage loan was $1,104,103.10 as of August 31, 1983, and granted the government's motion for summary judgment. *United States v. American National Bank and Trust Co.*, 595 F.Supp. 2613 (N.D.Ill.1983) aff'd. unpublished order (7th Cir., Jan. 16, 1984). The unpublished order of January 16 allowed HUD to proceed with the foreclosure sale previously scheduled for January 18, 1984. On January 17, 1984, EES Lambert filed its chapter 11 petition.

There is no dispute regarding the amount or purpose of the disbursements the United States seeks to recover. As noted, EES Lambert paid Hannafan & Handler $20,500 for legal services for defenses in the HUD foreclosure action. Schwartz & Freeman $25,000 as a retainer for legal services in connection with the chapter 11 proceedings. These payments are reported as disbursements from rental and other income received by the Lambert Quarter Apartment project. The court believes that its inquiry is limited to determining if EES Lambert should have paid these lawyers with project income.

The note, mortgage and regulatory agreement for multi-family housing projects, a copy of which is attached to the United States's memorandum as exhibit 2, make up the loan documents. Paragraph 5(b) of the regulatory agreement prohibits the owners of a project, without the prior written approval of the secretary of HUD, from assigning, transferring, disposing of, or encumbering any personal property of the project, including rents, or pay out any funds except from surplus cash, except for reasonable operating expenses and necessary repairs. Surplus cash is defined in paragraph 13(f) as any cash remaining after the payment of all sums due or currently required to be paid under the terms of any mortgage or note insured or held by

the secretary; of all amounts required to be deposited in the reserve fund for replacements; and of all obligations of the project other than the insured mortgage unless funds for payment are set aside or deferment of payment has been approved by the secretary; and after the segregation of an amount equal to the aggregate of all special funds required to be maintained by the project and of all tenant security deposits held.

No surplus cash has been available for EES Lambert's use because it has been in default on its mortgage payments since March of 1981 as noted in the Seventh Circuit's unpublished order.

This regulatory agreement further provides in paragraph 17 that project owners do not assume personal liability for payments due under the note and mortgage, but are liable for funds or property coming into their hands which they are not entitled to retain and for their own acts and deeds and deeds of others which they have authorized in violation of the provisions of the agreement.

The court finds and concludes that EES Lambert transferred project income to pay legal fees and retainers of Hannafan & Handler and Schwartz & Freeman. EES Lambert is liable for these payments unless they are reasonable operating expenses.

The regulatory agreement does not define operating expenses. In *United States v. Frank*, 587 F.2d 924 (8th Cir.1978), the court held that legal fees that Frank authorized to be paid from project funds to challenge HUD's termination of forebearance agreements executed with the partnerships and to enjoin foreclosure of the mortgages were not reasonable operating expenses of the project. The court observed (page 927):

The District Court properly determined that these legal services were not incidental to the operation or maintenance of the project but were related to the personal investment interest of the mortgagor partnerships.... A proper construction of [the provision authorizing dis-

bursements for 'reasonable operating expenses'] requires distinguishing expenses incurred primarily on behalf of the personal interests of the investors from those expenses related to the everyday operation of the enterprise. See *Thompson v. United States*, 408 F.2d 1075, 1079–80 (8th Cir.1969).

In *Thompson* the court held that legal fees paid for the original aquisition of the project, settlement of lien claims and closing the construction loan were not reasonable operating expenses of the project. This court observed that the term operating expenses should be construed with reasonable strictness and limited to expenses paid or incurred in connection with the actual operation of the project as a going concern.

This court respectfully agrees with the *Thompson* observation that operating expenses are expenses arising from the everyday operation and maintenance of the project. The term cannot be construed to include the legal fees paid to Hannafan & Handler and Schwartz & Freeman for EES Lambert expended these sums to retain the HUD insured project, a personal expense of the investors. Indeed, the court believes that EES Lambert paid these fees to prevent the foreclosure sought by HUD. The retention of Schwartz & Freeman for the filing of the chapter 11 petition was merely a continuation of efforts to avoid foreclosure.

This court is not dissuaded from its findings by the distinction from *Frank* that in this case HUD brought the foreclosure suit and not the mortgagors. In *Frank* and this case project funds were expended for legal services to prevent foreclosure by HUD and to maintain the partnership involved as owner and operator of the apartment project. Nor does *Thompson* because EES Lambert paid its lawyers after its project had been in operation for a number of years. It is not the timing of the payment but its character and purpose that determine it may be considered an operating expense. In *Thompson* the legal services were rendered so that the partnership

would be in a position to operate the project and in the case at bar so that the partnership would remain in a position to operate the project. These are partnership expenses that may not be paid with project income if there is no surplus cash. This is in accord with the observation of our Court of Appeals that the National Housing Act was primarily intended to benefit individuals who live in inadequate housing not commercial developers. *United States v. Winthrop Towers*, 628 F.2d 1028, 1036 (7th Cir.1980). To permit the funds to be used as EES Lambert suggests would not benefit the individuals intended.

The court also rejects the argument that paragraph 8 of the regulatory agreement providing that an owner shall not permit the seizure and sale of the mortgaged property under judicial process mandates these payments. This paragraph protects HUD from a judicial sale other than the one brought about by HUD's foreclosure action The court concludes that the provisios of paragraph 5(b) control EES Lambert's use of project income. It may use it to pay for legal services needed to collect rent, evict tenants and the like, i.e. legal fees incurred in the day to day operation of the apartments. The legal fees that EES Lambert paid its lawyers were not necessary or incidental to the everyday operation and are not operating expenses. Because these are not EES Lambert might not after default pay these fees from project income.

Moreover, EES Lambert's permission to collect and retain rents, profits and income from the apartments terminated on default. HUD as assignee could exercise its right to apply all project income to discharge the mortgage loan. The restrictions on the use of project income were part and parcel of the financing for the acquisition of the apartments, particularly in light of the waiver of personal liability. EES Lambert is liable for the $20,500 paid Hannafan & Handler and the $25,000 paid Schwartz & Freeman. The court will order restoration of these sums.

The government is not entitled, though, to an order requiring EES Lambert to

segregrate project income exceeding that necessary for operating expenses. The income generated from the operation does constitute cash collateral as defined by Code § 363(a) which EES Lambert may not use unless HUD consents or is provided with adequate protection under Code §§ 363(c)(2) or (e). The government's concern that EES Lambert may disburse moneys in violation of the regulatory agreement or may fail to remit excess income is not sufficient to warrant segregation. EES Lambert has reported the receipts and disbursements of project income for the months of January, February and March of 1984 as required by HUD. EES Lambert is to pay HUD $44,698.35 per month to provide adequate protection. If payments are not made the automatic stay will be lifted without further court order. In the court's opinion the agreement for monthly payments and the disclosure of EES Lambert's receipts and disbursements adequately protects HUD's interest in the excess income. The government's motion for a segregation of project income exceeding operating expenses will be denied.

It is therefore ordered that the motion of the United States to compel the debtor, EES Lambert Associates, to restore improperly diverted funds to the estate is granted. Debtor EES Lambert Associates shall restore the sum of $45,500 to the estate of EES Lambert Associates.

It is further ordered that the motion of the United States for an order directing the debtor to segregate and account for all income from the Lambert Quarter Apartments is denied.

Thomas W. James, retired bankruptcy judge, states that the foregoing is the memorandum and opinion that he on consideration of the facts and law would have issued on June 29, 1984, in this contested matter. He states that he has reviewed this memorandum and opinion as consultant to the clerk of the United States District Court for the Northern District of Illinois and recommends to United States Bankruptcy Judge Robert D. Martin that this memorandum and opinion be entered.