**In the Matter of EES LAMBERT ASSO-CIATES, an Illinois Limited Partnership, Debtor.**

**Nos. 84 B 591, 84 C 8003.**

United States District Court, N.D. Illinois, E.D.

March 18, 1986.

Sheldon L. Solow, Schwartz & Freeman, Chicago, Ill., for debtor/appellant.

John H. Mahoney, Dept. of Housing and Urban Development, Chicago, Ill., Eileen Marutzky, Asst. U.S. Atty., Chicago, Ill., for U.S.

1. There is a discrepancy in the briefs as to

## MEMORANDUM OPINION AND ORDER

DECKER, District Judge.

In this bankruptcy appeal, EES Lambert ("Lambert") seeks reversal of the bankruptcy court's decision ordering restoration of certain attorneys fees to the bankrupt's estate. *In re EES Lambert*, 43 B.R. 689 (Bankr.N.D.Ill.1984). Specifically, the court ordered restoration of a $20,500 legal fee paid to Hannafan & Handler for its defense of the successful foreclosure action brought by the Department of Housing and Urban Development ("HUD"), and a $25,-000 pre-petition retainer paid to Schwartz & Freedman for its representation in the bankruptcy proceeding. These payments were disbursed from rental and other income received from Lambert's operation of a housing project, its primary asset.

### I. *Factual Background*

The facts relevant to this appeal are largely undisputed. Lambert, a limited partnership, owns and operates an apartment complex in Justice, Illinois. Lambert is not the original developer of this project. When it took over the project, it assumed the previous developer's mortgage. That mortgage had been assigned previously to HUD. As part of Lambert's agreement with HUD, Lambert executed a "Regulatory Agreement." The bankruptcy court held that payment of the aforementioned attorneys fees violated the Regulatory Agreement. Lambert appeals that ruling.

### II. *Foreclosure Fees*

The Regulatory Agreement places certain restrictions upon Lambert's operation of the property. In particular, it provides that, when the mortgage is in default, as it was here, Lambert may not pay out project funds except for "reasonable operating expenses and necessary repairs" without HUD's consent. *See* Regulatory Agreement at ¶¶ 6(b), 13(f).[1] The issue on appeal is whether the attorneys fees are reasonable operating expenses. The bankruptcy

whether the language in issue appears in Para-

court ruled they were not, and ordered their restoration.

 The term "operating expenses" is nowhere defined in the Regulatory Agreement. The bankruptcy court characterized operating expenses as "expenses arising from the everyday operation and maintenance of the project." *Lambert,* 43 B.R. at 691. The court has no quarrel with this definition. It rightly distinguishes payments made for the investors' benefit from those made for the benefit of the project. *See accord Thompson v. United States,* 408 F.2d 1075, 1080 (8th Cir.1969). The attorneys fees in issue here fall into the former category and therefore, are not operating expenses.

 Appellants' arguments to the contrary are unpersuasive. Paragraph 8 of the Regulatory Agreement, which prohibits Lambert from permitting foreclosure, does not conflict with this interpretation of Paragraph 6. As the bankruptcy court rightly discerned, "[Paragraph 8] protects HUD from a judicial sale other than one brought about by HUD's foreclosure action." *Lambert,* 43 B.R. at 691. It would be curious indeed if HUD was required to finance both sides of its foreclosure action. Further, the issue is not whether Lambert is required to defend the foreclosure action, but whether it may use project funds to do so. The bankruptcy court rightly concluded that it may not.

### III. *Bankruptcy Retainer*

 The bankruptcy retainer was paid on January 17, 1984, the same day the bankruptcy petition was filed. Apparently, the retainer was paid prior to the filing of the petition. *Id.* at 689 ("The retainer was disclosed on the filing of the petition"). The bankruptcy court, thus, properly con-

---

graph 5 or Paragraph 6 of the Regulatory Agreement. *See* Appellee's Memorandum at 7. There is no dispute as to the substance of the operative language. The court cannot remedy this discrepancy because it has not been furnished with a copy of the agreement. The court will refer to the operative paragraph as Paragraph 6.

2. Once the estate is in bankruptcy, the debtor's employment of the estate's assets is governed by the bankruptcy code. The bankruptcy court

sidered the foreclosure and bankruptcy fees in the same light, concluding that neither were operating expenses.

 Lambert's contention that this ruling deprives it of the statutory right to file a petition in bankruptcy is unavailing. The Regulatory Agreement only prohibits Lambert from using project funds to pay a pre-petition retainer.[2] Again, the essential distinction is between expenses necessary for the ongoing operation of the project and those necessary to protect the investors. The former may be paid out of project funds while the mortgage is in default. The latter may not. None of the bankruptcy provisions cited by Lambert require a different result. *See accord In re TWO–KMF Development Association,* 63 B.R. 149 (Bankr.N.D.Ill.1985).

### IV. *Conclusion*

For the foregoing reasons, the court affirms the decision of the bankruptcy court.

---

characterized the project funds as cash collateral. *Lambert,* 43 B.R. at 692. The use of cash collateral is governed by 11 U.S.C. § 363. Specifically, Section 363(b) governs the use of cash collateral other than in the ordinary course of the debtor's business, i.e. for the payment of bankruptcy counsel's fees. Section 363(b) allows such a use of cash collateral only after notice and a hearing, which did not occur here.