**In the Matter of CD ELECTRIC COMPANY, INC. dba Alectrico, Inc., Debtor.**

**Bankruptcy No. 91–32475 HCD.**

United States Bankruptcy Court, N.D. Indiana, South Bend Division.

Aug. 27, 1992.

James A. Masters, South Bend, Ind., for the debtor.

Rein Schroeder, Granger, Ind., applicant.

Deborah Leonard, Asst. U.S. Atty., Fort Wayne, Ind., for IRS.

J. Richard Ransel, Elkhart, Ind., for VAB.

## ORDER

HARRY C. DEES, Jr., Bankruptcy Judge.

On March 18, 1992, James A. Masters, Esq. ("Masters") filed his APPLICATION FOR INTERIM ALLOWANCE OF COMPENSATION FOR ATTORNEY. Rein Schroeder, C.P.A. ("Schroeder"), filed his APPLICATION FOR INTERIM ALLOWANCE OF COMPENSATION FOR ACCOUNTANT on March 24, 1992. The United States of America, on behalf of its agency, the Internal Revenue Service ("IRS"), Reinke Construction Company ("Reinke"), Valley American Bank and Trust Company ("VAB"), and Industrial Engineering & Machine Corporation ("Industrial") objected to the applications. The court held a hearing on the applications and objections on Au-

gust 6, 1992,[1] and took the matter under advisement on the same date.

### Jurisdiction

Pursuant to 28 U.S.C. § 157(a) and Northern District of Indiana General Rule 45, the United States District Court for the Northern District of Indiana has referred this case to this court for hearing and determination. After reviewing the record, the court determines that the matter before it is a core proceeding within the meaning of § 157(b)(2)(A) over which this court has jurisdiction pursuant to 28 U.S.C. §§ 157(b)(1) and 1334. This entry shall serve as findings of fact and conclusions of law as required by Federal Rule of Civil Procedure 52, made applicable in this proceeding by Federal Rules of Bankruptcy Procedure 7052 and 9014.

### Background

On September 16, 1991, CD Electric Company, Inc., d/b/a Alectrico, Inc., filed its amended petition under Chapter 11 of the Bankruptcy Code. On September 16, 1991, and September 23, 1991, the court entered its orders approving Master's employment as attorney and Schroeder's employment as accountant for the debtor. In his application Masters asked the court to approve compensation of $8,594.50 and expenses of $1,720.53 for services which he rendered on behalf of the debtor from September 12, 1991, through March 16, 1992. Masters received a $2,000.00 retainer from the debtor, leaving an unpaid balance of $8,315.03. Schroeder sought compensation totalling $7,030.00 for accounting services rendered from September 12, 1991, through March 19, 1992.

The IRS objected to the payment of Masters' fees and expenses prior to the filing of certain tax returns and deposit of taxes for the first quarter of 1992 and argued that it should receive a pro rata payment of post-petition employment taxes at the time Masters is paid. Reinke took the position that the court should not allow the debtor to use the collateral securing Reinke's claim to pay administrative expenses.

VAB also submitted that its secured interest in the debtor's assets is superior to administrative claims and that the collateral securing its claim should not be used to pay professional fees. Finally, Industrial argued that "[i]f we can't get OUR money, then ... the attorney or accountant should [not] be able to receive money either." Industrial's objection at 1.

At the hearing Masters indicated that during the pendency of this case he filed a motion for the sale of the debtor's assets and obtained the secured creditors' consents to the sale. The debtor turned over the proceeds of the sale to VAB which holds a first mortgage on the debtor's assets. Masters also assisted the debtor in recovering accounts receivable on behalf of the secured creditors. Schroeder in turn prepared and filed tax returns for the debtor. As a matter of equity, Masters argued his fees and expenses and those of the debtor's accountant should be paid as a priority administrative expense.

### Discussion and Decision

The issues before the court are (1) whether Masters' and Schroeder's fees and expenses should be paid prior to the debtor's post-petition tax obligations; and (2) whether the fees and expenses may be paid from the secured creditors' collateral. The court will address these issues in turn.

1. *The payment of administrative expenses from secured creditors' collateral*

■ Generally, the administrative expenses of a debtor's case "are not to be charged against secured [or undersecured] creditors' collateral" because a secured creditor's interest in collateral is a property right which is not impaired in bankruptcy proceedings. *In re Chicago Lutheran Hospital Assoc.*, 89 B.R. 719, 726 (Bankr. N.D.Ill.1988), citing *In re Trim–X, Inc.*, 695 F.2d 296, 301 (7th Cir.1982) and *Dreyfuss v. Klein (In re Tyne)*, 257 F.2d 310 (7th Cir.1958); *In re Tri–County Water Ass'n, Inc.*, 91 B.R. 547, 549 (Bankr.D.S.D. 1988), citing *In re Cascade Hydraulics*

---

1. Industrial did not appear at the hearing.

*and Utility Serv., Inc.,* 815 F.2d 546 (9th Cir.1987); *General Electric Credit Corp. v. Levin & Weintraub (In re Flagstaff Foodservice Corp.),* 739 F.2d 73 (2nd Cir. 1984); and other cases. Administrative expenses instead are to be paid from the debtor's unencumbered assets. 89 B.R. at 727, citing *In re Korupp Assoc., Inc.,* 30 B.R. 659 (Bankr.D.Me.1983). The rationale for this rule is that the trustee or debtor in possession represents the interests of unsecured creditors rather than secured creditors. *Id.,* citing *In re Combined Crofts Corp.,* 54 B.R. 294, 297 (Bankr.W.D.Wis. 1985) and *Trim–X,* 695 F.2d at 301.

■ A trustee, debtor in possession, or professional for a trustee or debtor in possession[2] may collect fees and expenses from encumbered assets if he or she meets the exception set forth in 11 U.S.C. § 506(c), which states:

> (c) The trustee may recover from property securing an allowed secured claim the reasonable, necessary costs and expenses of preserving, or disposing of, such property to the extent of any benefit to the holder of such claim.

11 U.S.C.S. § 506(c) (Law.Co-op.1985). The party seeking to recover costs and expenses under § 506(c) has the burden of showing that the subsection is applicable. 89 B.R. at 727. Section 506(c), however, " 'was not intended as a substitute for the recovery of administrative expenses that are appropriately the responsibility of the debtor's estate.' " *Trim–X,* 695 F.2d at 301, quoting *In re Codesco, Inc.,* 18 B.R. 225, 230 (Bankr.S.D.N.Y.1982).

■ Alternatively, one may recover compensation and expenses from encumbered assets if the secured creditor consented to the charges. 89 B.R. at 727, citing *Combined Crofts,* 54 B.R. at 297 and *Trim–X,* 695 F.2d at 301. *Accord In re Energy Cooperative, Inc.,* 55 B.R. 957, 964 (Bankr. N.D.Ill.1985), citing *In re Hotel Assoc., Inc.* 6 B.R. 108 (Bankr.E.D.Pa.1980) ("[I]f ... the secured creditor in some way requested or encouraged professional services to be rendered, he will be deemed to have consented to having said professional's fees imposed on his collateral."). A court should not lightly infer a secured creditor's consent on this critical issue. *In re Energy Cooperative,* 55 B.R. at 964, citing *General Electric Credit Corp.,* 739 F.2d at 77, citing *In re S & S Industries, Inc.,* 30 B.R. 395, 398 (Bankr.E.D.Mich. 1983).

■ A professional must forego compensation and reimbursement of expenses if an estate has no unencumbered assets and the professional is unable to show that he or she meets the criteria set forth in 11 U.S.C. § 506(c) or that the secured creditor consented to the charges. *Id.* at 964, citing *Dozoryst v. First Financial Savings and Loan Assoc.,* 21 B.R. 392 (N.D.Ill.1982) and Savage, "The Secured Claimholder's Liability for the Costs and Expenses Incurred in Bankruptcy," 90 Comm.L.J. 430 (October 1984). "When it appears ... that there will be sufficient assets in the estate to pay ... priority claims, an interim award of fees may be justified." 55 B.R. at 965, citing *In re American Int'l Airways, Inc.,* 47 B.R. 716 (Bankr.E.D.Pa.1985).

Reviewing the record in this case, the court finds that no unencumbered assets exist from which Masters' and Schroeder's fees and expenses can be paid. The applicants did not dispute that VAB holds a lien upon all of the debtor's assets and proceeds thereof. The court previously found:

> 3. That the Debtor's indebtedness to [VAB] is secured by a properly perfected security interest on all of the Debtor's accounts receivable, inventory equipment, contract rights, general intangibles and proceeds and products thereof (the "Collateral").

> 4. The Debtor has no source of cash that is not Cash Collateral

> ....

FINAL ORDER AUTHORIZING USE OF CASH COLLATERAL at 1–2. As the debtor's assets are fully encumbered, the court

---

**2.** The bankruptcy court determined in *Chicago Lutheran* that 11 U.S.C. § 506(c) clearly applies to debtors in possession as well as professionals for debtors in possession. 89 B.R. at 726–27 n. 9.

may not award interim compensation and reimbursement of expenses to the applicants unless their services fall within the exception set forth 11 U.S.C. § 506(c) or the secured creditors consented to the charges. The court will consider each of these exceptions.

### a. *Consent to charging the costs of administration against secured creditors' collateral*

The court is able to locate only two documents in the record from which it might infer that the debtor's secured creditors consented to the use of their collateral to pay administrative expenses. First, VAB and the debtor agreed to the entry of the court's FINAL ORDER AUTHORIZING USE OF CASH COLLATERAL issued November 25, 1991. The order authorized the debtor to use VAB's cash collateral "to pay its wages, salaries and ordinary business expenses in an amount not to exceed $10,000 per week." FINAL ORDER AUTHORIZING USE OF CASH COLLATERAL at 2. The order, however, further stated:

> 8. No cost or expense chargeable or alleged to be chargeable against the Pre-petition Collateral under § 506(c) of the Code shall be incurred in these proceedings without the express consent of Bank *and* the prior authorization of the Court after notice to the Bank and an actual hearing. Nothing contained in this Order shall be deemed to be a consent by Bank to any charge, lien, assessment or claim against the Aggregate Collateral under § 506(c) of the Code or otherwise.

FINAL ORDER AUTHORIZING USE OF CASH COLLATERAL at 4. The court accordingly cannot construe VAB's consent to the order as consent to charging administrative expenses against VAB's collateral.

Second, on September 24, 1991, the debtor filed its AMENDED MOTION TO SELL ASSETS OF ESTATE NOT IN THE ORDINARY COURSE OF BUSINESS. Dyna-Bal, a division of Industrial, originally objected to the amended motion, but later withdrew the objection. The court entered its ORDER ON AMENDED MOTION TO SELL ASSETS NOT IN THE ORDINARY COURSE OF BUSINESS on October 28, 1991. Although the debtor's secured creditors assented to the sale, the court is unable to conclude that by doing so they consented to charging Masters' and Schroeder's fees and expenses against their collateral. The court's order stated only that the auctioneer's commission and expenses would be paid from the proceeds of the sale. The court thus concludes that the secured creditors did not consent to the assessment of administrative costs, other than the commission and expenses of the auctioneer who conducted the sale, against the collateral securing the debtor's obligations to them.

### b. *Recovery of costs and expenses under 11 U.S.C. § 506(c)*

As the court noted in *In re EES Lambert Assoc.*, 62 B.R. 328, 342 (Bankr. N.D.Ill.1986), under proper circumstances a professional may recover the value of reasonable, necessary services and expenses incurred in selling a secured creditor's property from the creditor's collateral notwithstanding the creditor's lack of consent. The court must find, however, that the services performed and expenses incurred were "reasonable," "necessary," and "of benefit" to the secured creditor under 11 U.S.C. § 506(c). *Id.* Courts have construed the § 506(c) exception narrowly. *Chicago Lutheran*, 89 B.R. at 727–28, citing *Trim–X*, 695 F.2d at 301 and *In re The New England Carpet Co.*, 28 B.R. 766, 772 (Bankr.D.Vt.1983) ("Any tertiary benefit received by the secured creditor, especially when it is undercollateralized, is too indefinite and remote to support the allowance of attorney's fees against the property."). Some courts have limited a professional's recovery of fees and expenses from a sale "to the actual foreclosure costs the secured creditor saved." 62 B.R. at 342, citing *In re Codesco*, 18 B.R. at 228–29 and *Moister v. The Farmers Bank (In re Truitt)*, 15 B.R. 169, 170–72 (Bankr.N.D.Ga.1981). When sale proceeds are sufficient to cover the expenses of the sale and the secured claim against the property, these courts have disallowed the recovery of costs from the collateral, concluding that the secured

creditor "received no benefit because its claim would have been satisfied without the intervention of the trustee or debtor-in-possession." *Id.*

■ Reviewing the record before it, the court is unable to conclude that any of the services of the debtor's counsel and accountant were reasonable, necessary services that benefited the debtor's secured creditors. The record shows that the debtor had arranged to sell a significant portion of its assets prior to filing its petition. If the debtor had not filed its petition, Masters' services in assisting with the sale would have been unnecessary. Counsel's actions primarily benefited the debtor by allowing it to continue in business for a short time after the assets were sold. Similarly, the remainder of Masters' services and expenses incurred in connection with the bankruptcy proceeding did not result in a reasonable, necessary benefit to the debtor's secured creditors under 11 U.S.C. § 506(c).

During the pendency of this case, the debtor lost over $175,000. The debtor also operated in violation of this court's order appointing it as debtor in possession by failing to pay post-petition employment tax obligations beginning in January 1992. Although the debtor filed a plan of reorganization in February 1992, the same month its operating report stated: "Incoming cash stopped. As a result all employees left due to no cash available to pay them." February 1992 operating report at 1. The debtor did not file a liquidating plan until May 13, 1992. Although the filing of the debtor's petition may have been a legitimate effort to reorganize the debtor's company, the court is unable to conclude that the proceeding benefited secured creditors, especially in light of the significant losses incurred. Secured creditors no doubt would have received a substantial portion of those funds, but for the bankruptcy filing.

The court regrets that Masters and Schroeder, who indisputably performed a substantial amount of work for the debtor in possession, cannot be compensated for their labors. As a matter of law, however, the court is bound to respect the property rights of secured creditors in the collateral securing the debtor's obligations to them. The result in this case no doubt will serve as a warning to others who may be asked to perform services on behalf of a debtor whose assets are fully encumbered. In the interests of equity, the court will approve and authorize the payment *nunc pro tunc* of the $2,000 retainer which Masters received prior to the filing of the debtor's petition. The secured creditors have not asked for the return of these funds and the court believes that approval of the retainer is appropriate under the circumstances of this case.

### 2. *IRS's entitlement to pro rata payment of its administrative claim*

■ Because no unencumbered funds exist from which administrative expenses can be paid, the court finds it unnecessary to address at length the IRS's objection to the applications for compensation. The court agrees that unpaid post-petition employment taxes qualify as administrative expenses under 11 U.S.C. § 503(b) which would be entitled to pro rata payment with other administrative expenses if unencumbered funds were available to pay the expenses. As unencumbered assets are not available, the issue is moot.

### *Conclusion*

The court denies Masters' and Schroeder's applications for interim compensation, finding that the applicants failed to demonstrate that: (1) unencumbered assets exist from which their fees and expenses may be paid, (2) the debtor's secured creditors consented to the charge of administrative fees and expenses against their collateral, or (3) their services fall within the meaning of 11 U.S.C. § 506(c). The court further finds that the IRS's objection is moot. In the interests of equity, the court approves and authorizes the payment *nunc pro tunc* of Masters' pre-petition retainer.

SO ORDERED.