In re RLA OF MADISON, INC., Debtor.

Bankruptcy No. 394–01033.

United States Bankruptcy Court,
M.D. Tennessee.

June 17, 1994.

David G. Rogers, Brentwood, TN, for debtor.

John M. Roberts, U.S. Atty., M.D. Tenn., Richard F. Clippard, Asst. U.S. Atty., Nashville, TN, Thomas Kelly Derryberry, Sp.

Asst. U.S. Atty., U.S. Dept. of HUD, Nashville, TN, for Housing and Urban Development.

### MEMORANDUM

ALETA ARTHUR TRAUGER,
Bankruptcy Judge.

This matter came before the court upon the Notice and Application for Allowance of Compensation and Reimbursement of Expenses filed by counsel for the debtor and the objection of the United States Department of Housing and Urban Development ("HUD"). The issue presented is whether funds in which HUD has a security interest may be used to pay the debtor's attorney fees incurred in connection with the Chapter 11 case. The court concludes that the funds may not be used for such purposes. The following constitute findings of fact and conclusions of law. *Fed.R.Bank.P.* 7052.

HUD holds a Deed of Trust on the Maybelle Carter Retirement Center ("the project"), a retirement service center owned by the debtor. HUD also holds a security interest in the rents and other income generated by the Project by virtue of the Deed of Trust and related financing documents, including a "Regulatory Agreement for Multifamily Housing Projects" dated May 15, 1989. Paragraph 6(b) of the Regulatory Agreement provides that the debtor, as the owner, "shall not without the prior written approval of the Secretary ... [a]ssign, transfer, dispose of, or encumber any personal property of the project, including rents, or pay out any funds except from surplus cash, except for reasonable operating expenses and necessary repairs." Paragraph 13(f) defines "surplus cash" as any cash remaining after:

(1) the payment of:

    (i) All sums due or currently required to be paid under the terms of any mortgage or note insured or held by the Secretary;

    (ii) All amounts required to be deposited in the reserve fund for replacements;

    (iii) All obligations of the project other than the insured mortgage unless funds for payment are set aside or

deferment of payment has been approved by the Secretary; and

(2) the segregation of:

    (i) An amount equal to the aggregate of all special funds required to be maintained by the project; and

    (ii) All tenant security deposits held.

The debtor defaulted on the mortgage in July of 1990, and thus no "surplus cash" as defined in the Regulatory Agreement has been available since that time.

The debtor filed its Chapter 11 petition on February 16, 1994, after unsuccessful negotiations with HUD. The parties thereafter executed an "Agreed Order for the Use of Cash Collateral and Adequate Protection" which was entered by this court on April 1, 1994. Paragraph One of the Agreed Order provides that the debtor may use HUD's cash collateral "only for the purpose of paying the ordinary, necessary, and reasonable expenses of its ordinary business operations and fees to the U.S. Trustee." The Agreed Order further requires the debtor to establish a separate bank account to collect and accumulate rents, and prohibits the debtor from spending more than $2,000 on any repair to the Project without the prior consent of HUD.

A subsequent amendment to Paragraph Four of the Agreed Order, dated April 26, 1994, provides that "the debtor does not contest the validity or priority of HUD's security interest in any portion of the Collateral."

On April 29, 1994, the debtor's attorney filed a Notice and Application for Allowance of Compensation and Reimbursement of Expenses. The total fees and expenses requested were $9,124.27, to be paid from the $7500 prepetition retainer paid by the debtor from "funds on hand" and from "post-petition earnings of the debtor." HUD objects to the payment of any of these fees and expenses from funds which constitute its collateral.

■ The general rule is that administrative expenses, such as attorney fees, "are charged against the estate and not against secured creditors." *In re Westwood Plaza Apartments Limited,* 154 B.R. 916, 921 (Bankr.E.D.Tex.1993). This is because a se-

cured creditor's interest in collateral is a property right which is not impaired in bankruptcy proceedings. *Matter of CD Electric Company, Inc.*, 146 B.R. 786, 788 (Bankr. N.D.Ind.1992).

■ Courts have permitted a departure from this general rule only when: 1) the creditor is oversecured; 2) the creditor consents; or 3) the attorney's services directly benefitted the secured creditor. *See In re EES Lambert Associates*, 62 B.R. 328, 340 (Bankr.N.D.Ill.1986) ("Lambert II"). Because there is no dispute that HUD is undersecured in this case, the first exception is inapplicable.

■ Regarding the second exception, "a court should not lightly infer a secured creditor's consent on this critical issue." *CD Electric*, 146 B.R. at 789. In this case, it is clear that HUD has not consented, either before or after the bankruptcy filing. The Regulatory Agreement permits payment only of "reasonable operating expenses and necessary repairs," while the Agreed Order specifically permits payment only of "ordinary, necessary, and reasonable expenses of [the debtor's] ordinary business operations" and U.S. Trustee fees.

Courts have strictly construed the concept of operating expenses, limiting such expenses to those "paid or incurred in connection with the *actual operation* of the project as a going concern." *Matter of Tampa Bay Briarwood Associates Limited*, 118 B.R. 126, 128 (Bankr.M.D.Fla.1990) (emphasis in original). "Operating expenses" cannot be construed to include attorney fees which are expended primarily to keep the debtor in a position to operate the business itself; those fees are a personal expense of the investors. *Lambert II*, 62 B.R. at 332. As one court noted, "the essential distinction is between expenses necessary for the ongoing operation of the project and those necessary to protect the investors. The former may be paid out of the project funds while the mortgage is in default. The latter may not." *In re EES Lambert Associates*, 63 B.R. 174, 176 (N.D.Ill.1986).

In two cases involving Regulatory Agreements with provisions virtually identical to paragraphs 6(b) and 13(f) of the Regulatory Agreement in this case, courts have held that the payment of a prepetition retainer from the debtor's operating income violated the Regulatory Agreements at issue. *See In re Garden Manor Associates*, 70 B.R. 477 (Bankr.N.D.Cal.1987); *In re EES Lambert Associates*, 43 B.R. 689 (Bankr.N.D.Ill.1984), *aff'd* 63 B.R. 174 (N.D.Ill.1986) ("*Lambert I*"). In both cases, the courts found that legal fees were not operating expenses and thus were not payable from project income.[1] *Garden Manor*, 70 B.R. at 482; *Lambert I*, 43 B.R. at 691. *See In re Marion Carefree Limited Partnership*, No. 93–33010, 1994 WL 115911 (Bankr.N.D.Ohio Mar. 17, 1994) (same holding on Regulatory Agreement with similar but not identical terms).

■ Under the reasoning in these cases, the court finds that payment of the prepetition retainer from project income was a violation of the Regulatory Agreement. The court also finds that the use of postpetition income to pay attorney fees would violate both the Regulatory Agreement and the Agreed Order.

■ The final exception permits use of postpetition cash collateral to pay attorney fees based upon 11 U.S.C. § 506(c), which provides that "the reasonable, necessary costs and expenses of preserving, or disposing of" property securing an allowed secured claim may be charged against the collateral "to the extent of any benefit to the holder of such claim." To charge a secured creditor with these expenses, the debtor must show that "the fees and expenses were: (1) necessary, (2) reasonable, and (3) incurred primarily for the benefit of the secured creditor resulting in a quantifiable direct benefit to the secured creditor." *Westwood Plaza*, 154 B.R. at 921–22 (citing *In re Senior-G & A Operating Co., Inc.*, 957 F.2d 1290, 1298–99 (5th Cir.1992)).

---

1. As in the instant case, both debtors were in default on their respective mortgages, and thus there was no "surplus cash" from which fees might properly be paid. *Garden Manor*, 70 B.R. at 480; *Lambert I*, 43 B.R. at 690.

In this case, the debtor asserts that HUD receives a benefit from the debtor's attorney's efforts because they enable the debtor to proceed in Chapter 11, rather than converting to Chapter 7, which in turn increases HUD's potential payment on its claim. Various courts have rejected this argument, however, holding that the benefit to the secured creditor must be direct, something other than the generalized benefits of bankruptcy or of Chapter 11 as opposed to Chapter 7. *See Westwood Plaza,* 154 B.R. at 922; *Lambert II,* 62 B.R. at 341–42. As in the *Westwood Plaza* case, the court finds that in this case "the benefit that HUD has received is only incidental. Services were incurred directly, and primarily, to assist the debtor to reorganize and maintain ownership of the [project]." 154 B.R. at 922. The debtor has failed to show that the attorney fees and expenses were incurred primarily for HUD's benefit and thus, may not rely on § 506(c) to pay its attorney fees and expenses from HUD's collateral.

Because the debtor cannot establish any of the three recognized exceptions to the general rule prohibiting payment of attorney fees from a secured creditor's collateral, it must pay those fees "from unencumbered funds if any, or from funds other than those generated by the operation of the debtor." *Tampa Bay Briarwood,* 118 B.R. at 129. Because HUD has not requested this court to order the attorney to disgorge the prepetition retainer, the funds will remain in the attorney's escrow account but may not be used for payment of the fees requested at this time.

An appropriate order will be entered.

### ORDER

For the reasons stated in the Memorandum filed herewith, the objection of the United States Department of Housing and Urban Development to the Notice and Application for Allowance of Compensation and Reimbursement of Expenses filed by debtor's counsel is hereby sustained.