**In re HIGHLAND HILLS, LTD., Debtor.**

**Bankruptcy No. 397–37470 RCM–11.**

United States Bankruptcy Court, N.D. Texas, Dallas Division.

Aug. 12, 1998.

Order Denying Reconsideration, Sept. 9, 1998.

Craig H. Averch, Neligan & Averch, L.L.P., Dallas, TX, for Debtor.

James J. Faughnan, Trial Attorney, Commercial Litigation Branch, Washington, DC.

Frank Z. Elmer, Special Assistant United States Attorney, United States Department of Housing and Urban Development, Fort Worth, TX.

### MEMORANDUM OPINION AND ORDER ON MOTION TO COMPEL

ROBERT McGUIRE, Chief Judge.

On July 31, 1998, came on to be heard the motion of Highland Hills, Ltd. ("Debtor") to compel the United States Department of Housing ("HUD") to pay expenses per court order (the "Motion"). This Court has jurisdiction over this core proceeding under 28 U.S.C. §§ 1344 and

157(b)(2)(A), (M), and (O). The Court, after reviewing the record and hearing argument, makes the foregoing and following findings of fact and conclusions of law pursuant to Bankruptcy Rules 9014 and 7052.

The facts relating to the Motion are simple, straightforward, and undisputed. The Debtor was the owner and operator of an apartment complex in Dallas County, Texas, commonly known as the Highland Hills Apartments (the "Property").

From August 14, 1997 to march 27, 1998 (the "DIP Period"), the Debtor owned and operated the Property as a debtor-in-possession pursuant to §§ 1107 and 1108 of the Bankruptcy Code.

On or about March 27, 1998, this Court entered its Order Denying Plan Confirmation and Regarding Motion to Lift Automatic Stay (the "Subject Order"). Pursuant to the Subject Order, among other things, the Debtor turned over the Property and all of the proceeds of the Debtor's bank accounts. The Debtor complied with its obligations under the terms of the Subject Order. A true and correct copy of the Subject Order is attached to the Motion as Exhibit A.

Pursuant to the third decretal paragraph of the Subject Order, HUD is required to "pay all of the unpaid postpetition expenses provided that such expenses are reasonable and were incurred with respect to the normal and necessary operations of the Property. . . ."

Over the past several months, counsel for the Debtor and counsel for HUD have cooperated in resolving the payment of all postpetition expenses except for one. Specifically, HUD has refused to pay the management fees for the Property for the DIP Period.

No management fees were paid during the pendency of the Chapter 11 case. During the DIP Period, as the manager of the Property, Lexis collected approximately $444,274 in total rental income. Additionally, Dallas County has paid HUD an additional $89,971 attributable to tenant occupancy before March 28, 1998.

It is undisputed that the standard and reasonable management fee is 6% of the gross rentals income for real property similar to the property in question. Six percent of the gross rental income attributable to occupancy during the DIP Period would amount to a fee of $32,054.71.

Debtor contends that, per the subject order, HUD is required to pay $32,054.71 as the reasonable, ordinary, and normal management fee. The issue involved is whether HUD, by agreeing to the Subject Order, waived its right to protest the management fees, which it otherwise could have protested under its contracts with the Debtor.

HUD contends:

Because the management fees allegedly incurred by the Debtor were incurred in violation of the Regulatory Agreement, the Management Agreement, and the Certification, project income cannot be used to pay those fees. Thus, HUD is not required, and has properly refused, to pay those fees. Those fees are obligations of the Debtor only.

(HUD's Response at p. 5).

Under the terms of the Regulatory Agreement, the Debtor was required to provide for the management of the Property in a manner satisfactory to HUD. (Regulatory Agreement ¶ 9(a)).

The terms of the Regulatory Agreement permit HUD to terminate the Management Agreement with or without cause:

9.(a) . . . Any management contract entered into by [the Debtor] . . . involving the project shall contain a provision that it shall be subject to termination, without penalty and with or without cause, upon written request by [HUD] addressed to [the Debtor]. Upon receipt of such request [the Debtor] shall immediately terminate the contract within a period of not more than thirty (30) days

and shall make arrangements satisfactory to [HUD] for continuing proper management of the project.

(Regulatory Agreement ¶ 9(a)).

On March 1, 1989, the Debtor executed the Management Agreement with CFC pursuant to which CFC was to manage the Property. (Management Agreement at 1).

The Debtor and CFC further certified that they understood "that no fees may be earned or paid after HUD has terminated the Management Agreement." (Certification ¶ 1c).

On May 28, 1997, HUD exercised its right to terminate the Management Agreement then existing between the Debtor and CFC, effective June 30, 1997.

After June 30, 1997, the date on which the Management Contract was terminated, the Debtor could not pay, and CFC could not earn, management fees. (Certification ¶ 1c).

The Regulatory Agreement expressly provides that, upon receipt of HUD's termination notification, the Debtor "shall make arrangements satisfactory to [HUD] for continuing proper management of the project." (Regulatory Agreement ¶ 9(a)).

The Debtor agreed to submit a new Management Certification to HUD prior to permitting a new agent to operate the project, and prior to permitting a new agent to collect a fee. (Certification ¶¶ 10d and 10e).

In a letter dated July 1, 1997, the Debtor requested HUD to withdraw its May 28, 1997 termination letter. That request was based on the Debtor's representation that Mr. Burk intended to sell CFC to Mr. Larry Stern, who, according to the Debtor, would manage the Property under the name of Lexis Realty Corporation ("Lexis"), a newly formed Texas Corporation. (Letter from Debtor's counsel, Mr. Norman L. "Happy" Nelson, Jr., to Mr. E. Ross Burton and Mr. Ray Carson, dated July 1, 1997, a copy of which is attached as Exhibit G to HUD's Response). Mr.

Stern intended to retain all of CFC's employees. (*Id.*).

HUD denied approval of Lexis as the new management agent. (HUD Response Ex. I).

Lexis was not and is not the HUD-approved management agent for the Property.

The management fees at issue here, however, are not "reasonable" in light of the fact that they were incurred in violation of the Regulatory Agreement, the Management Agreement, and the Certification. *U.S. v. Frank,* 587 F.2d 924, 928 (8th Cir.1978). Management fees incurred in violation of the Regulatory Agreement are not "obligations of the project." *Id.* Thus, HUD is not required to pay the management fees at issue here because they, like the fees incurred in *Frank,* are not obligations of the project (*i.e.,* the management fees are not "reasonable").

Prior to the time of agreeing to the order in question, HUD continued to make Debtor aware of its objections to the management agreement and fees, because the management company was engaged in violation of the Regulatory Agreement, the Management Agreement and Certification. (*Also see,* Cash Collateral Order (HUD Exhibit D)).

At the time the Subject Order was entered into, the parties effectively agreed to resolve, at a later date, the issue of whether project funds could be used to pay these management fees. The Subject Order did not modify HUD's rights under the cash collateral order, the regulatory agreement, the management agreement, and certification to challenge the payment of these management fees.

It is, therefore, **ORDERED** that Debtor's motion to compel payment of the Lexis Management fees is **OVERRULED** and **DENIED.**

### ORDER DENYING MOTION FOR RECONSIDERATION

On this date, the Court considered the motion of Highland Hills, Ltd. ("Debtor")

for reconsideration. The Court, after again reviewing the motion, the record, pleadings, argument, and opinion, is of the opinion that such motion for reconsideration should be overruled for the reasons stated in the opinion and including also:

1. The Debtor and CFC certified that they understood "no fees may be earned or paid" after HUD has terminated the Management Agreement. (Certification, HUD Exhibit ("Ex.") C at 1). (Opinion at 865–66). Termination occurred before any of the fees allegedly were earned.

2. HUD is not required to pay the management fees at issue because, like the fees incurred in *U.S. v. Frank,* 587 F.2d 924, 928 (8th Cir.1978), the management fees are not obligations of the project and therefore they are not reasonable. (Opinion at 866).

3. The order entered March 27, 1998 (the "MIP Order") has to be interpreted in view of the fact and circumstances existing, one of which was that this was a HUD project. Reasonable management expenses with respect to normal and necessary operations of a HUD project, in the context of this case, would be those of a HUD-approved management company.

4. At argument on July 31, 1998, Debtor's attorney first stated, in essence, that "(a) it was questionable whether there was sufficient project funds on hand to pay all expenses; and (b) that the order does not say payment is to be from project funds." At a later point, such counsel stated that all money from Debtor's bank accounts, including money escrowed for management fees was turned over to HUD per the MIP Order. Paragraphs 7 and 8 of the agreement attached to the MIP Order state:

7. Except as otherwise provided in the attached order, the Mortgagor acknowledges that the, in taking possession of this Project, assumes none of the liabilities, costs or expenses incurred by the Mortgagor prior to the taking of possession by the Secretary.

8. The Mortgagor and Secretary acknowledge that the *actions detailed* herein *are* to be *taken without prejudice to or waiver of any right of the Secretary* or Mortgagor *in any matter that has* or may *arise in connection with the Project.*

(Emphasis added). Some of the actions referred to in such paragraph 8 included receipt of funds and property of the project from the Debtor. *Also see,* Cash Collateral Order of September 4, 1997, at 3, HUD Ex. D, reading in part: "ORDERED that the management fees, presently invoiced or budgeted, be sequestered in an identifiable account and not be drawn upon until HUD approves the management agent, or until any dispute surrounding HUD's approval of the management agent is resolved by this Court." "Drawn upon" in the context of such cash collateral order appears to mean drawn upon by Debtor. HUD never approved such management agent. By the MIP Order and the July 31, 1998 hearing, it appears that the parties were submitting the "dispute surrounding HUD's approval of the management agent" for resolution by this Court.

The foregoing constitutes additional findings of fact and conclusions of law under Bankruptcy Rules 9014 and 7052.

It is, accordingly, **ORDERED, ADJUDGED** and **DECREED** that the Debtor's Motion for Reconsideration of the Court's Order Denying the Debtor's Motion to Compel be, and the same is, in all things, **OVERRULED.**