**In re HIL'CREST APARTMENTS, a Partnership, Debtor.**

**No. 83 B 5725.**

United States Bankruptcy Court, N.D. Illinois, E.D.

June 25, 1985.

Charles J. Myler, Ruddy, Myler, Ruddy & Fabian, Aurora, Ill., for debtor.

Gregory C. Jones, U.S. Atty. for the N.D. of Ill. by Gail C. Ginsberg, Asst. U.S. Atty., John H. Mahoney, Associate Regional Counsel, Chicago, Ill., for HUD.

## MEMORANDUM AND ORDER

ROBERT L. EISEN, Bankruptcy Judge.

This matter was heard on the motion of the United States of America, on behalf of the United States Department of Housing and Urban Development (HUD), to compel the debtor, Hil'Crest Apartments, to restore allegedly improperly diverted funds to the estate. For reasons set forth in the memorandum, this Court, having carefully considered all pleadings, memoranda and documentary evidence, does find that the $5,200 paid to the debtor's bankruptcy attorneys were improperly diverted from Hil'Crest's operating account and must be restored.

## BACKGROUND

The debtor, Hil'Crest Apartments, is a limited partnership formed in 1971. The sole asset of the debtor is a three building apartment complex containing 135 units located in Aurora, Illinois. The building was financed by HUD pursuant to the National Housing Act. Hil'Crest is currently indebted to HUD under a first mortgage in excess of $2,400,000. The mortgage has been in default since January, 1976. Between 1976 and May, 1983, Hil'Crest entered into two separate provisional work-out agreements with HUD to remedy the default. For various reasons, Hil'Crest could not meet its obligations under the work-out agreements and they remained in default. In February, 1983 HUD initiated foreclosure proceedings and on May 5, 1983 Hil'Crest filed its Chapter 11 petition.

Prior to the filing of the Chapter 11 petition, Hil'Crest paid its bankruptcy attorneys a $5,200.00 initial retainer for services and costs to be incurred in conjunction with this bankruptcy. It is undisputed that these funds were paid out of the operating account of Hil'Crest which contained the apartment complex's rent receipts.

HUD maintains that this payment represents an improper diversion of project funds under the regulatory agreement, which is part of the first mortgage agreement between HUD and Hil'Crest. HUD requests that this Court enter an order requiring Hil'Crest to restore the $5,200.00 to the operating account. Hil'Crest maintains that the fees were properly paid as an operating expense within the terms of the regulatory agreement and within the spirit and purpose of the Bankruptcy Code (11 U.S.C. § 101 et seq. (1979)) and its provisions for reorganization.

Therefore, the issue is whether the $5,200.00 retainer paid to Hil'Crest's bankruptcy attorneys represented a reasonable operating expense of the project.

## DISCUSSION

When Hil'Crest signed the note and mortgage on this project, they also executed a regulatory agreement which was

incorporated into the mortgage. Paragraph 6(b) of that regulatory agreement is as follows:

6. Owners shall not without the prior written approval of the Commissioner:

(b) Assign, transfer, dispose of, or encumber any personal property, including rents, or pay out any funds, *other than from surplus cash,* except for reasonable operating expenses and necessary repairs; (Emphasis added).

Government Exhibit 4. Under paragraph 13(g), which defines surplus cash, it is impossible for the borrower to be in a surplus cash position while also in default under the underlying note. Since Hil'Crest has been in default since 1976, they have not been in a surplus cash position since that time. Therefore, the issue is narrowed as to whether the expenditures for the bankruptcy attorneys and court costs can be classified as "reasonable operating expenses."

This issue was recently addressed in this district in *In re EES Lambert Associates,* 43 B.R. 689 (Bkrtcy., N.D.Ill.1984), *appeal docketed,* No. 84 C 8003 (N.D.Ill.Sept. 18, 1984). The *EES Lambert* case is very similar to the case at bar. Like Hil'Crest, EES Lambert was a partnership whose sole asset was an apartment complex financed by HUD under the National Housing Act. EES Lambert had paid out of the operating account of the project attorneys' fees to defend a HUD foreclosure action and paid additional attorneys' fees to file a Chapter 11 bankruptcy. As here, HUD in *EES Lambert* petitioned the court to order those funds restored to the project's operating account as per the terms of the regulatory agreement. The issue in *EES Lambert* is identical to the issue which confronts the Court today.

There the court held that the payment of attorney fees to defend a HUD foreclosure action and then to file and prosecute a Chapter 11 bankruptcy can not be considered as reasonable operating expenses. The Court defined operating expenses as those "expenses arising from the everyday operation and maintenance of the project."

*Id.* at 691. *Accord, U.S. v. Frank,* 587 F.2d 924, 927 (8th Cir.1978); *Thompson v. U.S.,* 408 F.2d 1075, 1080 (8th Cir.1969). These expenses are more properly defined as partnership expenses and are personal expenses of the investors. *EES Lambert* at 691. This Court agrees.

Hil'Crest attempts to distinguish *EES Lambert* "on the basis of the finding that an abuse of Chapter 11 was involved." Memorandum for Hil'Crest at page 3. This Court can glean no such finding after an extensive review of *EES Lambert.* In fact, it would be difficult to find two more analogous cases. Both bankruptcies were filed after foreclosure proceedings were instituted by HUD. Both cases involved projects which were in default. The effect of both filings was to forestall the HUD foreclosure proceedings. In both cases, HUD sought to have the partnership restore funds to the project's operating account which were used to pay attorneys' fees for filing a Chapter 11 bankruptcy. The cases involve identical regulatory agreements.

Hil'Crest argues that if the Court were to grant HUD's motion it would have a dilatory effect on the ability of project owners to avail themselves of the protection afforded by the Bankruptcy Code and urges this Court to use its equitable powers to deny HUD's motion. The Court does not agree with Hil'Crest's analysis.

By granting HUD's motion, the Court does not in any way prohibit or preclude Hil'Crest or any other similarly situated debtor from exercising their rights under the Bankruptcy Code. The Court is merely recognizing and enforcing a valid security agreement. The primary benefactors of a successful reorganization in this case would be the investors, primarily James R. Little, the general partner of Hil'Crest, who has personal liability on the partnership debts except for the HUD loan from which he is exempted from personal liability by the terms of the loan agreement. It is because of this exemption that the regulatory agreement provides for restrictions on the use and disbursement of project

generated funds. The equities here weigh in favor of the secured creditor HUD, not the debtor. Hil'Crest is free to retain and pay counsel to represent it in these proceedings, it just can not do so with funds from the project's operating account. As the court in *EES Lambert* noted:

> Moreover, EES Lambert's permission to collect and retain rents, profits and income from the apartments terminated on default. HUD as assignee could exercise its rights to apply all project income to discharge the mortgage loan. The restriction in the use of project income were part and parcel of the financing for the acquisition of the apartments, particularly in light of the waiver of personal liability.

*EES Lambert* at 691.

Hil'Crest also asserts that the tenants benefited by the filing of the Chapter 11 petition thereby bringing the attorneys' fees within the ambit of normal operating expenses. Hil'Crest asserts that the filing protected the tenants from an imminent loss of utilities but yet does not provide the Court with any notices from the utilities required by Ill.Ann.Stat. ch. 111⅔, § 32.4 (Smith-Hurd 1984) before a utility can disconnect services showing that such disconnection was imminent. Even if the disconnection were imminent, HUD would have stepped in to see that the services were continued as it is required to do on any project which it finances. Regardless of what Hil'Crest decided to do, the tenants would not have lost utility service.

## CONCLUSION

The fees paid to Hil'Crest's bankruptcy attorneys to prepare, file and litigate this bankruptcy are not reasonable operating expenses of the Hil'Crest Apartment complex. The fees are expenses of the partnership and can only be paid out of partnership funds.

THEREFORE, IT IS HEREBY ORDERED that the motion of HUD to compel debtor to restore improperly diverted funds to the operating account of Hil'Crest Apartments is granted. Debtor Hil'Crest Apartments shall restore $5,200 to the estate within 10 days of the entry of this order.