**In re TWO–KMF DEVELOPMENT ASSOCIATION, Debtor.**

**Bankruptcy No. 84 B 7354.**

United States Bankruptcy Court, N.D. Illinois, E.D.

Dec. 19, 1985.

James Montgomery, Jr. for debtor.

Robert A. Filipi for Creditors' Committee.

Eileen M. Marutzky, U.S. Atty., John H. Mahoney, Assoc. Regional Counsel, for United States.

*Memorandum and Order*

JOHN D. SCHWARTZ, Bankruptcy Judge.

On November 5, 1985 the Court entered an order regarding the briefing of (i) allegations of the Official Unsecured Creditors' Committee ("Committee") concerning Project (hereinafter defined) property which is not subject to the October 31, 1968 Project mortgage and (ii) the motion of the United States of America ("Government") to compel debtor's counsel to return retainer fees which were paid by the debtor for representation in this case shortly before the case commenced on June 11, 1984.

The Court has amended its order of October 11, 1985 authorizing the employment of Robert A. Filipi as attorney for the Committee and the payment to him of a retainer of $3,500 to provide that the funds used by the debtor for the payment of the allowed retainer must not come from Project funds.

The Government's motion is to compel the return to the debtor of the retainer fees in the amount of $10,000 paid to each of the law firms of Lord, Bissell & Brook and James D. Montgomery Jr. The Government's motion will be allowed at this time to the extent that each firm will be directed to place the retainer fees received in their respective firm trust accounts where the fees will remain subject to the further order of this Court. The foregoing shall be accomplished by January 6, 1986 and each firm shall notify the Government and the Court of compliance in open Court on January 9, 1986 at the hour of 10:30 a.m.

. . . . .

The debtor is an Illinois not-for-profit corporation, organized for the purpose of constructing, owning, operating and managing low-income housing in Chicago, Illinois. The housing so owned is called Woodlawn Gardens, and consists of 504 dwelling units in 24 three-story walk-up buildings, two elevator buildings and a one story community building located on the east and west side of Cottage Grove Avenue between 60th and 63rd Streets ("Project").

The Government's memorandum in support of its Motion to Dismiss or in the Alternative for Relief from the Automatic Stay sets forth in a clear and distinct manner the history of the Project. The Note has been in default almost from the time of the completion of the Project some fifteen years ago. The first modification agreement was entered into in June of 1970 extending the commencement of amortization to January 1, 1971. The debtor missed its March 1, 1972 Note payment and has been in default since that date. Despite the parties' attempts to work out arrangements to salvage the Project, the Government commenced a foreclosure suit in July of 1981. The debtor answered and counterclaimed. The Court dismissed the counterclaim. In June of 1984 the Government moved for summary judgment and the debtor commenced this Chapter 11 case. The Government alleges that as of the date of the commencement of this case, the debtor owed in excess of $13,000,000 on the obligation secured by the Project.

Three principle documents were executed by the Debtor and govern the Project. They are (1) Secured Note, (2) Mortgage and (3) Regulatory Agreement. (In this instance a Security Agreement was also entered into in December of 1970 prior to the final endorsement of the Note, but this instrument covers only personal property.) The Mortgage, Regulatory Agreement and Security Agreement follow the Note. The Note was originally payable to Republic Realty Mortgage Corporation. On December 12, 1968 the Note was assigned to Continental Illinois National Bank and Trust Company, subsequently assigned by the Continental to the Government National Mortgage Association and then assigned again by GNMA to the Secretary of Housing and Urban Development which is the present owner and holder of the Note. The Project remains subject to the above designated instruments. (See ¶ 15 of the Regulatory Agreement.)

■ The Regulatory Agreement provides:

> In consideration of the endorsement for insurance by the Commissioner of the above described note or in consideration of the consent to the Commissioner to the transfer of the mortgaged property, and in order to comply with the requirements of Section 221(d)(3) of the National Housing Act as amended, and the Regulations adopted by the Commissioner pursuant thereto Owners agree for themselves and successors, heirs and assigns, that in connection with the mortgaged property and the project operated thereon and so long as the contract of mortgage insurance continues in effect and during such further period of time as the Commissioner shall be the owner, holder or reinsurer of the mortgage, or during any time the Commissioner is obligated to insure a mortgage on the mortgaged property;
>
> 7. Owners shall not without the prior written approval of the Commissioner:

(a) Convey, transfer, or incumber any of the mortgaged property, or permit the conveyance, transfer or incumberance of such property;

(b) Assign, transfer, dispose of, or incumber any personal property of the project, including rents, or pay out any funds, *except for reasonable operating expenses and necessary repairs* (emphasis added).

The foregoing quoted provisions of the Regulatory Agreement restrict the debtor in its use of Project funds. The debtor violated the terms of this commitment when it paid retainers to the law firms of James D. Montgomery, Jr. and Lord Bissell & Brook from funds generated from the operations of the Project. The funds in question were not used for the purposes required by the Regulatory Agreement. The language of the Regulatory Agreement is clear, precise and in the opinion of this Court there is no doubt that such payments for retainers to secure bankruptcy counsel to file this case are improper. Funds generated from the operations of the Project cannot be used except for the purposes agreed to by the parties. This does not prevent the debtor from using its non-Project funds for such purpose. In addition to the aforesaid $20,000, the debtor has admitted to the improper disposition to its affiliate organizations of some $772,196.77. (The debtor alleges this amount has now been reduced to $681,846.09 which the Government does not concede.) The Government does not seek the return of these funds. (Exhibit A to Government's Reply Memorandum, filed August 30, 1985.)

The Government's Response to Application Directing Debtor to Pay Retainer and Motion to Compel Debtor to Restore Improperly Diverted Funds to the Estate, filed August 19, 1985 and its Reply Memorandum filed on November 29, 1985 sets forth the applicable law.

Two judges of this Court have rendered opinions which clearly set forth the law. It would not serve a useful purpose and would unduly lengthen this memorandum for this Court to again set forth this law. Suffice it to say that the Court adopts the reasoning set forth in *EES Lambert Associates,* 43 B.R. 689 (Bankr.N.D.Ill.1984) and *Hil'Crest Apartments, a Partnership,* 50 B.R. 610 (Bankr.N.D.Ill.1985). Since the *Lambert* case is on appeal the Court has not directed the return of these retainers to the debtor, but rather to the safe keeping of both firms' trust accounts.

In addition the Court calls the parties' attention to *In re Bob Grissett Golf Shoppes, Inc.,* 50 B.R. 598, 3 Bankr.L.Rep. (CCH) ¶ 70,608, (Bankr.E.D.Va.1985), which sets forth most of the cases governing the use of a secured parties property to pay administrative costs. Clearly the Government did not consent to the payment of the retainers in question. It is just as clear that the debtor and its attorneys have not been prejudiced by the delay in the Government's motion as the attorneys have had the use of the funds.

Debtor's basic argument is that the Court should excuse its actions because it is a not-for-profit community oriented corporation whose aim is to protect the interests of the disadvantaged in our society. The Court accepts this as the purpose of the debtor, but nevertheless cannot excuse the debtor its obligation to obey the law and comply with its written agreements, among them the Regulatory Agreement.

The debtor has apparently sold 93.5% of the Project to Valley Investments Fund Ltd. (See Statement of Financial Affairs.) What funds, if any, were received from this sale is not disclosed, but it appears that Valley and its investors have reaped substantial federal tax benefits from this alleged ownership. The debtor, by the commencement of this case in its own person, acknowledged that the Project has not been transferred. The record does not disclose to the Court what legal tax advantage non-owners can have in the Project. In addition, there is no exculpation provision in the Note, Mortgage or Regulatory Agreement which would permit the tax benefits to flow to limited partners, but which would not have affected the debtor's obligation with

respect to Project funds. (See stricken ¶ 16 of the Regulatory Agreement).

■ The Creditors' Committee seeks to except fixtures on the real estate from the Mortgage. The Creditor's Committee's allegation that the mortgage is not an effective fixture filing under the provisions of the Commercial Code of the State of Illinois appears on its face to be correct. However, no fixture filing is necessary under the provisions of Illinois Law. Section 9–313 of the Commercial Code (Ill.Rev.Stat. ch. 26 § 9–313, 1967) provides:

Priority of Security Interests in Fixtures. (1) The rules of this Section do not apply to goods incorporated into a structure in the manner of lumber, bricks, tile, cement, glass, metal work and the like and no security interest in them exists under this Article unless the structure remains personal property under applicable law....

(3) A security interest which attaches to goods after they become fixtures is valid against all persons subsequently acquiring interests in the real estate except as stated in subsection (4) but is invalid against any person with an interest in the real estate at the time the security interest attaches to the goods who has not in writing consented to the security interest or disclaimed an interest in the goods as fixtures.

Bathtubs, water closets, sinks, elevators and the like are attached to and are an integral part of the real estate. *Cf. Davis Store Fixtures, Inc. v. Cadillac Club*, 60 Ill.App.2d 106, 207 N.E.2d 711 (2d Dist. 1965). Clearly the real estate was subject to the Mortgage at the time the fixtures were attached. The mortgage specifically covers:

All aparatus and fixtures of every kind in, or that may be placed in, any building now or hereafter standing on said land, and also the estate, right, title, and interest of the said Mortgagor in and to said premises; including but not limited to all gas and electric fixtures; all radiators, heaters, furnaces, heating equipment, steam and hot-water boilers, stoves, and ranges: all elevators and motors; all bathtubs, sinks, water closets, basins, pipes, faucets, and other plumbing fixtures; all mantels and cabinets ... together with all building materials now or hereafter delivered to said premises and intended to be installed therein.

The Creditor's Committee has not supplied the Court with any evidence of the Government's consent to the attachment of a lien on the fixtures in question.

■ Unless and until it is shown that there are assets of the Project free of the Mortgage or Security Agreement, no funds of the Project can be used to pay legal fees which are in the nature of administrative costs incurred by the debtor in these proceedings. The Court has therefore amended the order authorizing the debtor to pay the retainer fees to counsel for the Creditors' Committee. (A copy of the Order entered modifying the Order of October 11, 1985, enclosed with this Memorandum and Order.)

NOW THEREFORE IT IS ORDERED that the law firms of Lord, Bissel & Brook and James D. Montgomery, Jr. shall each place the $10,000 retainer received from the debtor in their respective trust accounts for safe keeping where such funds shall remain subject to further order of this Court. The foregoing shall be accomplished by January 6, 1986.

IT IS FURTHER ORDERED that each law firm will notify the Government and the Court of compliance with this Order in open court on January 9, 1986 at 10:30 a.m. at which time there will also be a status hearing on the Government's Motion to Dismiss and Motion for Adequate Protection.