USCA1 Opinion

 

 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT  ____________________ No. 94-2233 INDIAN MOTOCYCLE ASSOCIATES III LIMITED PARTNERSHIP, Appellant, v. MASSACHUSETTS HOUSING FINANCE AGENCY, Appellee,  ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS [Hon. Frank H. Freedman, Senior U.S. District Judge] __________________________  ____________________ Torruella, Chief Judge, ___________ Cyr and Stahl, Circuit Judges. ______________  ____________________ Paul R. Salvage, with whom Susan Luttrell Burns and Bacon & _________________ ______________________ _______ Wilson, P.C. were on brief for appellant. ____________ Kevin C. Maynard, with whom Mark D. Cress and Bulkley, Richardson ________________ _____________ ___________________ and Gelinas were on brief for appellee. ___________  ____________________ October 2, 1995  ____________________ CYR, Circuit Judge. Indian Motocycle Associates III CYR, Circuit Judge. ______________ Limited Partnership, a chapter 7 debtor, appeals from a district court order reversing a bankruptcy court decision denying appellee Massachusetts Housing Finance Agency's ("MHFA") motion to compel the chapter 7 debtor to restore diverted cash collater- al to the chapter 7 estate. We vacate the district court order and remand to the bankruptcy court for further proceedings. I I BACKGROUND BACKGROUND __________ A. The Regulatory Agreement A. The Regulatory Agreement ________________________ In 1987, MHFA loaned Indian Motocycle Associates Limited Partnership ("Indian Motocycle") $8.6 million to develop low-income housing in Springfield, Massachusetts [hereinafter: "the Project"]. Under a program authorized by the National Housing Act ("NHA"), 12 U.S.C. 1701, 1709, 1715k et seq. __ ____ (1994); 24 C.F.R 250.1 (1994), the United States Department of Housing and Urban Development ("HUD") coinsured the non-recourse mortgage loan.1 In order to qualify for HUD coinsurance, Indian Motocycle signed a "Regulatory Agreement," obligating it to comply with pertinent HUD regulations and conditions whereby the individual Indian Motocycle partners assumed personal liability "for funds or property of the Project which come into their hands and which they are not entitled to retain; and . . . for their  ____________________ 1NHA coinsurance permits the private lender to assign its note and mortgage to HUD if unable to collect from the borrower. See 12 U.S.C. 1710. ___ 2 own acts and deeds or acts and deeds of their authorized agents that are in violation of the provisions of this Agreement." The Regulatory Agreement is incorporated into the mortgage by express reference. In addition to conveying a first mortgage on all real property belonging to the Project, Indian Motocycle assigned all its Project leases, rents, profits and income to MHFA "for the purpose of discharging the [note]." See Mortgage 4; 12 U.S.C. ___ 1715k(d)(2)(A). MHFA in turn authorized Indian Motocycle to collect and apply Project rents to enumerated purposes, including loan repayments and "reasonable expenses necessary to the opera- tion and maintenance of the Project." Regulatory Agreement  3(b). Indian Motocycle's right to collect Project rents terminat- ed upon default. See Mortgage 4. In the event the debtor were ___ to breach the Regulatory Agreement, MHFA or HUD would be entitled to seek specific performance, injunctive relief, or the appoint- ment of a receiver for the Project. See Regulatory Agreement  ___ 17-18. The mortgage and Regulatory Agreement were duly recorded by MHFA.  In 1989, Indian Motocycle transferred its ownership interest in the Project to Indian Motocycle Associates III Limited Partnership, which assumed the MHFA note and mortgage; in August 1992, it defaulted. MHFA promptly tendered notice of default but took no immediate steps to acquire possession of the Project (as by foreclosure) or the rents (as by appointment of a receiver). Meanwhile, Indian Motocycle Associates III Limited 3 Partnership had withdrawn $65,000 from the rents on deposit in the Project operating accounts, with which, inter alia, it _____ ____ retained counsel in contemplation of the commencement of a voluntary chapter 11 proceeding ($35,000 retainer) and an accoun- tant (Coopers & Lybrand) to prepare a prepetition audit of the Project ($20,000).2 On December 15, 1992, following these disbursements, Indian Motocycle Associates III Limited Partner- ship (hereinafter: "debtor") filed its chapter 11 petition and continued to operate the Project as a debtor in possession.3 Pursuant to the Regulatory Agreement, MHFA filed a motion to compel the debtor "to restore [the $65,000 in cash collateral] improperly diverted from the [chapter 11] estate in violation of Title II of the [NHA]."4  B. The Bankruptcy Court Decision B. The Bankruptcy Court Decision _____________________________ The bankruptcy court ruled that the unauthorized prepetition transfer of MHFA cash collateral to retain chapter 11  ____________________ 2An additional $5,000 was used to retain counsel to prepare and file a proof of claim in behalf of Indian Motocycle Associ- __ ______ ates III Limited Partnership in an unrelated bankruptcy case. Another $5,000 was transferred to a business owned by a principal of the debtor's managing general partner, for a purpose not disclosed in the appellate record. See infra notes 18 & 20. ___ _____ 3The chapter 11 proceeding has since been converted to chapter 7, see Bankruptcy Code 1112, 11 U.S.C. 1112, and a ___ chapter 7 trustee has been appointed, id. 702. ___ 4At the same time, MHFA sought to sequester all postpetition rents. Thereafter, on June 23, 1993, prior to denying the MHFA motion to compel, the bankruptcy court granted an interim MHFA motion for relief from the automatic stay. See Bankruptcy Code  ___ 362(d), 11 U.S.C. 362(d). MHFA represents that it has since foreclosed upon all collateral except the monies at issue on appeal. 4 counsel violated the Regulatory Agreement. In re Indian Moto- ___________________ cycle Assocs. III Ltd. Partnership, 161 B.R. 865, 867-68 (Bankr. __________________________________ D. Mass. 1994).5 The court nonetheless denied the motion to compel the debtor to restore the $65,000 to MHFA, noting that Regulatory Agreement violations by the debtor were "irrelevant," given that the motion to compel purported to assert MHFA's legal rights against the debtor only and that no adversary proceeding had yet been commenced against the debtor's general partners, attorneys or accountants, the transferees in possession. Id. at ___ 868. During the bankruptcy court proceedings, MHFA had relied on case law to the effect that a debtor's unauthorized prepetition disbursement of rents securing an NHA-insured loan warrants postpetition relief compelling the debtor and/or its attorneys to restore the encumbered funds to the debtor estate. Id. The bankruptcy court reasoned, however, that the requested ___ relief would undermine the Bankruptcy Code distribution scheme by entitling $65,000 of the HUD/MHFA unsecured claim against the chapter 11 estate to "super priority" status.  On intermediate appeal, the district court reversed and remanded to the bankruptcy court for entry of an order compelling the "[d]ebtor to restore the distributions diverted from the  ____________________ 5The bankruptcy court traced the source of the contested monies directly to Project rents, as distinguished from individu- al partner advances as suggested by the debtor. Id. at 867. On ___ the other hand, the court mistakenly characterized the entire $65,000 distribution as a retainer fee for legal services. Id. ___ at 865; see infra note 6. ___ _____ 5 estate." Massachusetts Hous. Fin. Agency v. Indian Motocycle _________________________________ ________________ Assocs. III Ltd. Partnership (In re Indian Motocycle Assocs. III ____________________________ ___________________________________ Ltd. Partnership), 174 B.R. 351, 357-58 (D. Mass. 1994) (citing _________________ Bankruptcy Code 105(a), 11 U.S.C. 105(a) (empowering the court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title")). II II DISCUSSION DISCUSSION __________ The debtor contends that the bankruptcy court correctly determined that it lacked authority under Bankruptcy Code  105(a) to order a chapter 11 debtor even one who concedes that it improperly diverted a secured creditor's collateral shortly before filing its chapter 11 petition to return the collater- al (or its monetary equivalent) to the chapter 11 estate. The debtor argues that it no longer retained a property "interest" in, or control over, the diverted collateral on the date it filed its chapter 11 petition and, accordingly, the collateral never became property of the chapter 11 estate amenable to administra- tion. See Bankruptcy Code 541(a)(1), (6), 11 U.S.C. 541(a)- ___ (1), (6) (providing that estate is comprised of "all legal or equitable interests of the debtor in property as of the commence- __ __ ___ _________ ment of the case," including "rents . . . from [real] property of ____ __ ___ ____ the estate") (emphasis added). Further, the debtor says, its diversion of the encumbered rents did not alter the amount of ______ MHFA's claim against the debtor estate, which remained the balance outstanding on the note at the date of the chapter 11 6 petition. Finally, the debtor argues that the bankruptcy court correctly declined to follow those courts which have ordered chapter 11 debtors in possession to restore to the debtor estate diverted NHA-encumbered rents, see infra Section II.A.2, since ___ _____ those cases did not involve a non-federal agency like MHFA, nor did those courts cite to legislative history indicating that Congress intended that NHA policy override the debtor protection policy underlying the Bankruptcy Code, including the right to utilize monies in the debtor's possession to fund prepetition retainers of chapter 11 counsel.  A. Injunctive Relief A. Injunctive Relief _________________ We review challenged rulings of law by the district court de novo and contested findings of fact by the bankruptcy __ ____ court for clear error. See In re Laroche, 969 F.3d 1299, 1301 ___ _____________ (1st Cir. 1992).6 A bankruptcy court's decision granting or denying injunctive relief pursuant to Bankruptcy Code 105(a) is reviewed only for abuse of discretion. See, e.g., Western Auto ___ ____ ____________  ____________________ 6On appeal, neither party challenges the bankruptcy court findings that (1) the entire $65,000 was disbursed as a retainer for legal services, and (2) the entire disbursement breached the Regulatory Agreement. Although this first finding is not an accurate reflection of the record evidence, cf. supra note 2 & ___ _____ accompanying text; note 5, it does not infect the legal conclu- sions reached by the bankruptcy court, nor our decision on appeal. Nor need we address the bankruptcy court ruling that these disbursements, as a matter of law, did not constitute _____ "reasonable expenses necessary to the operation and maintenance of the Project." In re Indian Motocycle Assocs. III Ltd. Part- _______________________________________________ nership, 161 B.R. at 868 (citing United States v. Frank, 587 F.2d _______ _____________ _____ 924 (8th Cir. 1978) (legal fees not "reasonable expenses" under HUD regulatory agreement)). Similarly, we decline to consider whether the prepetition disbursements for accounting services violated the Regulatory Agreement, since the bankruptcy court made no relevant findings.  7 Supply Co. v. Savage Arms, Inc. (In re Savage Arms, Inc.), 43 ___________ __________________ _________________________ F.3d 714, 719 n.8 (1st Cir. 1994). "Four principal factors govern the appropriateness of permanent injunctive relief: (1) whether the plaintiff has prevailed on the merits; (2) whether the plaintiff will suffer irreparable injury absent injunctive relief; (3) whether the harm to the plaintiff outweighs any harm threatened by the injunction; and (4) whether the public interest will be adversely affected by the injunction." Id. The present __ appeal implicates only the first two factors. 1. Injury 1. Injury ______ Although the bankruptcy court ruled that the debtor's prepetition transfer of MHFA's cash collateral constituted a conversion, it concluded that injunctive relief was unwarranted since the amount owed MHFA by the chapter 11 estate remained the same. To the extent this ruling suggests that MHFA sustained no cognizable injury, we disagree. Since there is no indication that MHFA's claim was over-secured, the conversion by the debtor of the $65,000 cash collateral reduced MHFA's secured claim by that amount, leaving MHFA with an unsecured claim for $65,000. See Bankruptcy Code 506(a), (b), 11 U.S.C. 506(a), (b); see ___ ___ also id. 541(a)(6) ("Such estate is comprised of . . . [p]ro- ____ ___ ceeds, product, offspring, rents, or profits of or from property _____ of the estate [viz., the Project]") (emphasis added).  The advantage to holding a secured claim to these rents in the chapter 11 proceeding is not to be underestimated. Since the rents constituted "cash collateral" securing the MHFA note, 8 id. 363(a) ("cash collateral" includes "cash . . . whenever ___ acquired in which the estate and an entity other than the estate have an interest and includes . . . rents . . . ."); cf. id.  ___ ___ 552(b) (governing enforceability of prepetition security interest against postpetition rents), the rents could not have been expended or transferred without MHFA consent, id. 363(c)(2)(A), ___ and bankruptcy court authorization conditioned on "adequate ___ protection" for MHFA's security interest, id. 363(c)(2)(B), ___ 361, 363(e). Thus, restoration of the converted cash collateral to the chapter 11 estate would have represented neither an empty judicial exercise, nor a windfall or "super priority" to MHFA, but appropriate recognition of the valuable legal advantage enjoyed by the holder of a secured claim in a bankruptcy proceed- ing.  Nevertheless, we do not think the bankruptcy court ruling should be interpreted simply as a determination that secured NHA lenders in these circumstances neither sustain cognizable injury nor have any recourse for recovering their collateral, but rather as a determination that MHFA prematurely ___________ sought extraordinary injunctive relief against the wrong party  _____ _____ the chapter 11 debtor without first attempting to exhaust other available remedies against nondebtors.  2. "Irreparability" of Injury; Adequacy of Remedy at Law 2. "Irreparability" of Injury; Adequacy of Remedy at Law ____________________________________________________ Every court which has considered the question has determined that the NHA empowers HUD to enforce its prepetition rights under a Regulatory Agreement notwithstanding the initia- 9 tion of a chapter 11 proceeding by or against the NHA borrower. See, e.g., In re EES Lambert Assocs., 43 B.R. 689, 691 (Bankr. ___ ____ __________________________ N.D. Ill. 1984), aff'd, 63 B.R. 174 (N.D. Ill. 1986); In re _____ ______ Marion Carefree Ltd. Partnership, No. 93-33011, 1994 Bankr. LEXIS ________________________________ 398, at *8-9 (Bankr. N.D. Ohio Mar. 17, 1994); In re Tampa Bay ________________ Briarwood Assocs., Ltd., 118 B.R. 126, 128-29 (Bankr. M.D. Fla. _______________________ 1990); In re Garden Manor Assocs., 70 B.R. 477, 486 (Bankr. N.D. ___________________________ Cal. 1987); In re TWO-KMF Dev. Assoc., 63 B.R. 149, 151 (Bankr. _________________________ N.D. Ill. 1985); In re Hil'Crest Apartments, 50 B.R. 610, 613 ___________________________ (Bankr. N.D. Ill. 1985). Three principal grounds appear to support postpetition enforcement of the NHA lender's prepetition contract remedies notwithstanding the fact that the debtor no longer has possession of, or access to, the precise collateral it diverted prior to the petition.  First, the debtor's own partners are the parties principally benefited by the prepetition diversion of the HUD collateral most notably in this case the fees for retaining professional assistance in fending off any MHFA foreclosure, thereby safeguarding their personal financial investments7 at the expense of low-income Project residents the intended  ____________________ 7The NHA allows HUD to coinsure non-recourse mortgages under which the partners are relieved from individual liability for the partnership obligation under the note. But the NHA conditions that relief on the partners' agreement to assume personal liabil- ity "for funds or property of the Project which come into their hands and which they are not entitled to retain; and . . . for their own acts and deeds or acts and deeds of their authorized agents that are in violation of the provisions of this Agree- ment." See In re Hil'crest Apartments, 50 B.R. at 612-13 (part- ___ __________________________ ners relieved of personal liability on partnership obligation in return for their agreement to restrictions on transfer of rents). 10 principal beneficiaries of the NHA. See In re Garden Manor, 70 ___ ___________________ B.R. at 485; In re Hil'crest Apartments, 50 B.R. at 612; In re ___________________________ _____ EES Lambert, 43 B.R. at 690. But for the unauthorized diversion, ___________ the rents normally would have been applied, as appropriate, toward Project maintenance. See In re Garden Manor, 70 B.R. at ___ __________________ 483, 485 (regulatory agreement is not an "executory contract" subject to rejection by debtor) (citing Bankruptcy Code 365). Second, the assignment-of-rents provision in the Regulatory Agreement is not merely a term in a private loan agreement, but a contractual precondition to coinsurance which Congress expected HUD to enforce in the public interest. See 12 __ ___ ______ ________ ___ U.S.C. 1709, 1715k, 1715v(c)(4) (listing numerous restrictions on NHA mortgagors). Permitting partnership debtors, or their individual partners, to divert public funds with any degree of impunity threatens significant depletion of the treasury, see In ___ __ re Garden Manor, 70 B.R. at 483, and ultimately undercuts public ________________ confidence in the efficacy of federal housing, lending, and insurance programs, thereby subverting Congress's announced intention to promote private construction of low-income housing. Id. ___ Third, these cases point out that there is no inherent inconsistency between the policies of the NHA and the Bankruptcy Code, in that the partnership debtor, and its individual part- ners, remain free to retain chapter 11 counsel provided they do not fund their retainers with the NHA lender's cash collateral. 11 Id. at 482, 486; In re TWO-KMF, 63 B.R. at 151; In re Hil'crest ___ _____________ _______________ Apartments, 50 B.R. at 612. __________ Notwithstanding the strong judicial support for these general policy considerations, however, we are given great pause at the prospect of fashioning extraordinary injunctive relief absent either demonstrated compliance with the explicit require- ______ ments of the enabling provision in the Bankruptcy Code, see 11 ___ U.S.C. 105(a), or some clear indication in the NHA that Con- __ gress envisioned such an accommodation between the NHA and the Bankruptcy Code. Thus, we think it is not enough simply to point to the importance of safeguarding the integrity of the NHA loan program, where neither the NHA, the Regulatory Agreement entered into pursuant to the NHA, nor the Bankruptcy Code itself so much as intimates that a bankruptcy court may fashion the extraor- dinary "reimbursement" relief sought by MHFA.  No matter how compelling the public policy reasons for formulating such extraordinary relief, it must be recognized that the right and remedy are judge-made. Bankruptcy courts must be __________ especially cautious about embarking upon a lawmaking exercise in circumstances where the injured party has neither demonstrated that it has exhausted, nor even pursued, efficacious alternative _______ forms of relief which, if available, might well preclude a finding that the relief sought from the bankruptcy court is either "necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." Bankruptcy Code 105(a), 11 U.S.C.  105(a). See generally Lopez v. Garriga, 917 F.2d 63, 68 (1st ___ _________ _____ _______ 12 Cir. 1990) (noting that injunction-seeker must first show that he has "no adequate remedy at law"); see also Baker v. United ___ ____ _____ ______ States, 27 F.2d 863, 875 (1st Cir. 1928) ("Where courts intrude ______ into their decree their opinions on questions of public policy, they in effect constitute the judicial tribunals as law-making bodies in usurpation of the powers of the Legislature.") (cita- tion omitted).8 We therefore decline to endorse the MHFA's request for extraordinary injunctive relief under Bankruptcy Code 105(a), absent any showing or appearance that it is either "necessary or appropriate to carry out the provisions" of the Bankruptcy Code. See Bankruptcy Code 105(a), 11 U.S.C.  ___ 105(a). B. Alternative Remedies B. Alternative Remedies ____________________ MHFA has not demonstrated that it is without other viable remedies against the debtor's general partners, chapter 11 counsel, and/or its accounting firm, for restoring the diverted collateral or its equivalent.  ____________________ 8Of course, federal courts may be expected to engage in lawmaking where Congress "ambiguously addresses" an issue in general terms, but deliberately leaves "an interstice" to be filled by the courts in conformity with the purposes of the statute. See Conille v. Secretary of Hous. and Urban Dev., 840 ___ _______ __________________________________ F.2d 105, 110 n.6 (1st Cir. 1988). This principle is of little utility in the instant case, however, for two principal reasons. First, there is no apparent interstice in the NHA, which express- ly prescribes severe criminal penalties for violating HUD Regula- tory Agreements, see 12 U.S.C. 1715z(19) ($250,000 fine, 5- ___ years' imprisonment), thereby providing a powerful deterrent to unauthorized prepetition diversions of HUD collateral by debtors. Second, the "reimbursement" remedy requested by MHFA not only necessitates a judicial assessment of NHA policy, but of any conflicting Bankruptcy Code policy. We do not regard this as an appropriate invitation to engage in judicial lawmaking, except as a last resort.  13 1. The General Partners 1. The General Partners ____________________ Whether or not it perfected its lien in the prepetition rents, see infra Section II.B.2, MHFA could have sued the debt- ___ _____ or's general partners for the value of the diverted collateral (or, at the very least, for any deficiency between the value of its collateral and any amount recovered by MHFA on its $65,000 unsecured claim against the chapter 11 estate), based on the Regulatory Agreement provision that expressly obligates the partners "for funds or property of the Project which come into their hands and which they are not entitled to retain; and . . . for their own acts and deeds or acts and deeds of their autho- rized agents that are in violation of the provisions of this Agreement." See, e.g., Austin v. UNARCO Indus., Inc., 705 F.2d ___ ____ ______ ___________________ 1, 4 (1st Cir.) (automatic stay normally does not foreclose suits against general partners of bankrupt partnership), cert. dis- _____ ____ missed, 463 U.S. 1247 (1983); see also supra notes 4 & 7. MHFA ______ ___ ____ _____ has not alleged, nor does the appellate record disclose, that the general partners are insolvent. 2. Chapter 11 Counsel  2. Chapter 11 Counsel  __________________ a) Perfection of MHFA Lien a) Perfection of MHFA Lien _______________________ In order to obtain any meaningful relief against the debtor or the transferees of the $65,000 in other venues, of course, MHFA would have to demonstrate that it held a perfected lien or security interest in the diverted rents; otherwise, as property of the chapter 11 estate, see Bankruptcy Code 541(a)- ___ (6), any unperfected lien on the rents would be subject to 14 avoidance by the debtor in possession pursuant to its "strong arm" powers. See id. 544(a) ("strong arm powers"), 1107(a); ___ ___ see generally In re Ryan, 851 F.2d 502, 512 (1st Cir. 1988) ___ _________ ___________ (trustee); In re Wabash Valley Power Ass'n, 114 B.R. 613, 617 _________________________________ (S.D. Ind. 1990) (debtor in possession). And once its unperfect- ed lien was voided under Bankruptcy Code 544(a), MHFA would have had no right to control the disposition of any portion of the $65,000 in cash collateral which remained property of the chapter 7 estate, cf. Bankruptcy Code 363(a), (c)(2), (e),9 ___ nor any right of recourse to lien foreclosure proceedings outside the bankruptcy court against third party transferees who acquired title to the rents prior to the debtor's chapter 11 petition, cf., e.g., In re McBee, 714 F.2d 1316, 1326 (5th Cir. 1983) ___ ____ ____________ (perfected security interest in collateral continues after collateral is conveyed). Nevertheless, we agree with the dis- trict court that the MHFA security interest in these rents had been perfected before the chapter 11 petition was filed. See In ___ __ re Indian Motocycle Assocs. III Ltd. Partnership, 174 B.R. at ___________________________________________________ 356.  ____________________ 9Following appointment of the chapter 7 trustee, see supra ___ _____ note 3, all avoidance powers resided exclusively in the trustee, not in the debtor. See Bankruptcy Code 1107(a), 11 U.S.C.  ___ 1107(a). We assume arguendo that the chapter 7 trustee would ________ attempt to avoid MHFA's lien in order that the net proceeds could be applied to claims against the estate, including any MHFA claim. For present purposes, however, we confine ourselves to an assessment of the debtor's avoidance powers at the time of the bankruptcy court ruling; that is, during the chapter 11 proceed- ing.  15 Although the prepetition perfection of a security interest in property of the estate normally is determined in reference to applicable state law, see Butner v. United States, _____ ___ ___ ______ _____________ 440 U.S. 48, 55 (1979), it is now well settled that the require- ments for perfecting a federal agency's security interest in property securing federally-insured loans a subject not addressed by the NHA is controlled by federal common law, see ___ United States v. Kimbell Foods, Inc., 440 U.S. 715, 726 (1979); _____________ ____________________ Butner, 440 U.S. at 55 (noting that state law governing perfec- ______ tion of security interests applies "unless some federal interest requires a different result");10 United States v. Landmark Park _____________ _____________ & Assocs., 795 F.2d 683, 685-86 (8th Cir. 1986) (rents); United _________ ______ States v. Floral Park Dev. Co., 619 F. Supp. 144, 147-48 (S.D. ______ _____________________ Ohio 1985) (rents); United States v. Borden Fin. Corp., 164 B.R. _____________ _________________ 260, 264 (E.D. La. 1994) (rents); cf. Graham v. Security Sav. & ___ ______ _______________ Loan, 125 F.R.D. 687, 692 (N.D. Ind. 1989) (federal law controls ____ government's rights in litigation involving federally guaranteed student loans), aff'd sub nom. Veal v. First Am. Sav. Bank, 914 _____ ___ ____ ____ ____________________ F.2d 909 (7th Cir. 1990); cf. also Conille v. Secretary of Hous. ___ ____ _______ __________________ and Urban Dev., 840 F.2d 105, 109 (1st Cir. 1988) (applying ________________ federal common law to litigation involving scope of HUD's obliga-  ____________________ 10Butner, a Bankruptcy Act case, remains viable precedent ______ under the Bankruptcy Code. See Wolters Village Ltd. v. Village ___ ____________________ _______ Properties, Ltd. (In re Village Properties, Ltd.), 723 F.2d 441, _________________ ______________________________ 443 (5th Cir.), cert. denied, 466 U.S. 974 (1984). _____ ______ 16 tions as NHA landlord, after finding NHA left this issue for the courts).11 Under established federal common law, HUD's securi- ty interest in post-default NHA rents normally is perfected simply by recording a HUD mortgage containing an assignment of _________ rents, which places third parties on notice of the HUD lien. See ___ Landmark Park & Assocs., 795 F.2d at 685-86 (noting need for _________________________ uniform federal rule in face of discordant state rules relating to perfection of security interests in rents); In re Westwood _______________ Plaza Apartments, Ltd., 154 B.R. 916, 920 (Bankr. E.D. Tex. 1993) ______________________ (same); cf. In re Executive House Assocs., 99 B.R. 266, 275-76 ___ ______________________________ (Bankr. E.D. Pa. 1989) (adopting Landmark Park "perfection" rule, _____________ but noting that other required means of perfection may be pre- scribed in security agreement; e.g., an express declaration of default). Of course, in our case the debtor concedes that the HUD mortgage and Regulatory Agreement were duly recorded in the appropriate registry of deeds, and that it had received a notice of default under the note before disbursing the $65,000.12   ____________________ 11Like the district court, we see no policy basis for distinguishing the instant case simply because MHFA, a state agency, rather than HUD, is the party presently seeking return of the collateral. Under the NHA coinsurance regime, MHFA will assign the note to HUD in return for payment of any unrecovered deficiency. See 12 U.S.C. 1710; see also supra note 1. In all ___ ___ ____ _____ events, given our determination, infra, that MHFA's security _____ interest was perfected under both federal and Massachusetts law, ____ ___ the distinction is inconsequential. See Conille, 840 F.2d at 110 ___ _______ (no need to adopt federal common law where there is "no 'signifi- cant conflict between some federal policy or interest and the use of state law'") (citation omitted). 12We note that the debtor's opening appellate brief did not challenge the district court ruling that the MHFA security interest in rents had been perfected. Issues presented for the first time in a reply brief normally are deemed waived. See ___ 17 Moreover, even if it were to be assumed that federal common law does not govern the perfection of MHFA's security interest, see supra note 11, the same result would obtain under ___ _____ Massachusetts law.13 In Prudential Ins. Co. of Am. v. Boston ____________________________ ______ Harbor Marina Co., 159 B.R. 616 (D. Mass. 1993), the district _________________ court held that a Massachusetts mortgagee which recorded its assignment of rents in the registry of deeds as an adjunct to its mortgage, "perfected" its lien in the rents so as to constitute the rents "cash collateral" under Bankruptcy Code 363(a), and that there was no need for the creditor to take possession of the real property (e.g., as by foreclosure) or the rents (e.g., as by  ____________________ Clarke v. Kentucky Fried Chicken, 57 F.3d 21, 27 (1st Cir. 1995). ______ ______________________ There is no basis for relief from waiver in the instant case. Even in its reply brief, the debtor chose not to discuss the implications of Kimbell or Butner on the choice-of-law question; _______ ______ instead simply stating its conclusion that Massachusetts law should be applied. See Williams v. Poulos, 11 F.3d 271, 285 (1st ___ ________ ______ Cir. 1993) (issues adverted to in perfunctory manner, without adequate argumentation, deemed waived).  13Although MHFA concedes that it did not file a financing statement, the law in most states, including Massachusetts, classifies an assignment of rents as an interest in real proper- ____ _______ ty. Thus, parties with security interests in future rents __ generated from encumbered real property need not comply with the Uniform Commercial Code. See Mass. Gen. L. Ann. ch. 106, 9- ___ 104(j) (excluding assignments of rent from Massachusetts U.C.C.); see also, e.g., Commerce Bank v. Mountain View Village, 5 F.3d ___ ____ ____ _____________ ______________________ 34, 39 (3d Cir. 1993); J.H. Streiker & Co. v. SeSide Co. (In re ___________________ ___________ _____ SeSide Co.), 152 B.R. 878, 882 (E.D. Pa. 1993); First Nat'l Bank __________ ________________ v. United States (In re Dorsey), 155 B.R. 263, 267 (Bankr. D. Me. _____________ ____________ 1993); see generally Laurence D. Cherkis, Collier Real Estate ___ _________ ____________________ Transactions and the Bankruptcy Code 2.03[1], at 2-65 (1992). _____________________________________ Instead, the mortgage and assignment of rents need only be recorded in the appropriate registry of deeds. See Mass. Gen. ___ Laws Ann. ch. 183, 4 (providing that unrecorded assignment of rents is invalid against third parties, except for persons with actual knowledge); see also In re Cadwell's Corners Partnership, ___ ____ ___________________________________ 174 B.R. 744, 754 (Bankr. N.D. Ill. 1994) (same). 18 appointment of a receiver) prior to the filing of the bankruptcy petition. Id. at 620-22 (recognizing distinction between "per- ___ fection," which governs secured creditor's rights against third parties, and "enforcement" of liens, which controls creditor's rights against its debtor; rejecting theory that such "inchoate" or unenforced security interests are voidable under Bankruptcy Code 544(a)); see also H.R. Rep. No. 95-595, 95th Cong., 1st ___ ____ Sess. 312 (1978) ("[T]he definition of 'lien' is new and is very broad . . . [and] [i]t includes 'inchoate lien[s]'").14 The Prudential court noted also that the "recordation" rule was fast __________ becoming the majority rule among the states, thus providing further support for the "uniform" federal rule of decision adopted in Landmark.15 See Conille, 840 F.2d at 112-13 (in ________ ___ _______ fashioning appropriate federal rule of decision, court should not  ____________________ 14The "possession" theory rejected in Prudential, supra, had __________ _____ essentially sounded the knell for most security interests in rents in the bankruptcy context, since the holder of a secured claim is precluded by the automatic stay from taking the very steps required to reduce rents to possession. See, e.g., Bank- ___ ____ ruptcy Code 362(a)(1), (a)(3), (a)(4).  15See In re Park at Dash Point L.P., 121 B.R. 850, 855 ___ ________________________________ (Bankr. W.D. Wash. 1990), aff'd, 152 B.R. 300 (W.D. Wash. 1991), _____ aff'd, 985 F.2d 1008 (9th Cir. 1993); In re Vienna Park Proper- _____ _________________________ ties, 976 F.2d 106, 112-13 (2d Cir. 1992) (Virginia law); In re ____ _____ SeSide Co., 152 B.R. at 884; In re Wiston XXIV Ltd. Partnership, __________ __________________________________ 147 B.R. 575, 580-81 (D. Kan. 1992), appeal dismissed, 988 F.2d ______ _________ 1012 (10th Cir. 1993); Midlantic Nat'l Bank v. Sourlis, 141 B.R. ____________________ _______ 826, 832 (D.N.J. 1992); Creekstone Apartments Assocs. v. RTC (In ______________________________ ___ __ re Creekstone Apartments Assocs.), 165 B.R. 845, 851 (Bankr. M.D. ________________________________ Tenn. 1993); SLC Ltd. V. v. Bradford Group West, Inc. (In re SLC __________ _________________________ _________ Ltd. V), 152 B.R. 755, 760-62 (Bankr. D. Utah 1993); In re KNM ______ _________ Roswell Ltd. Partnership, 126 B.R. 548, 554 (Bankr. N.D. Ill. _________________________ 1991); In re Rancourt, 123 B.R. 143, 147-48 (Bankr. D.N.H. 1991); ______________ In re Foxhill Place Assoc., 119 B.R. 708, 711 (Bankr. W.D. Mo. ___________________________ 1990); cf. Commerce Bank, 5 F.3d at 39 (recordation, coupled with ___ _____________ notice to tenants).  19 adopt forum state's law if it would frustrate NHA's purposes, but may consult other states' law as a "source" for the more apt _ federal common law rule) (citing Kimbell Foods, Inc., 440 U.S. ___________________ 715 (1979)).16 Accordingly, we conclude that the MHFA lien on rents was fully perfected prior to the chapter 11 petition, hence not voidable under Bankruptcy Code 544(a). b) Law Firm b) Law Firm ________ MHFA concedes that it can proceed against the debtor's counsel in the bankruptcy court only if the $35,000 in diverted cash collateral, intended as a prepetition "retainer," remains property of the estate, presumably as a fund held "in trust" for the debtor. MHFA cites several so-called "collateral reimburse- ment" decisions, see supra Section II.A.2, in which debtor ___ _____ ______ counsel have been directed to surrender to the bankruptcy estate _______ monies diverted to fund prepetition retainers. See, e.g., In re ___ ____ _____ Westwood Plaza Apartments, 154 B.R. at 923 n.11. MHFA itself _________________________ intimated at oral argument that it may request the chapter 7 trustee to recoup the putative trust monies from counsel, see ___ Bankruptcy Code 542, 11 U.S.C. 542, see also In re Sinder, ___ ____ ____________  ____________________ 16Though not retroactively applicable to this case, see In ___ __ re Barkley 3A Investors, 175 B.R. 755, 758 (Bankr. D. Kan. 1994), _______________________ the Bankruptcy Reform Act of 1994, Pub. L. 103-394 (Oct. 22, 1994), further supports the trend. Congress added a new subsec- tion dealing separately with the question whether a prepetition security interest in rents extends to postpetition rents. Under prior law, the bankruptcy court was required to look to "applica- ble nonbankruptcy law," usually state law, see Bankruptcy Code  ___ 552(b); the amendment now refers the court exclusively to the terms of the parties' "security agreement." See id. 552(b)(2); ___ ___ In re Barkley, 175 B.R. at 758 (noting that, henceforth, "courts ______________ will not look to state law" to determine security interests in rents). 20 102 B.R. 978, 982-83 (Bankr. S.D. Ohio 1989) (questioning whether parties other than trustee and debtor in possession have standing to bring 542 action), or may interpose objection to any fee application submitted by debtor counsel, see Bankruptcy Code  ___ 330, 11 U.S.C. 330.17 The question whether the $35,000 "retainer" is subject to turnover cannot be resolved on the present record, since it may ultimately turn on the precise terms of any "retainer" agreement between the debtor and its counsel. See, e.g., In re ___ ____ _____ McDonald Bros. Constr., Inc., 114 B.R. 989, 1002 (Bankr. N.D. ______________________________ Ill. 1990) (type of retainer is question of fact); see also In re ___ ____ _____ DLIC, Inc., 120 B.R. 348, 351 (Bankr. S.D.N.Y. 1990) (type of __________ retainer depends on intent of parties).18 Certain retainers simply ensure counsel's availability to represent the client (whether or not any legal services are ever performed), or constitute prepayment for all future legal services to be per- formed (e.g., a flat fee). In these circumstances, counsel acquires full title to the retainer fee on the date of payment, __ ___ ____ __ _______ regardless whether legal services are ever performed. See In re ___ _____ McDonald, 114 B.R. at 997-98, 999-1000; see also In re Mondie ________ ___ ____ _____________  ____________________ 17For present purposes, we assume arguendo that the chapter ________ 7 trustee would be amenable to MHFA's request that the trustee prosecute a 542 turnover action against the transferees, since the commensurate reduction in MHFA's unsecured claim could increase the recoveries of other holders of unsecured claims. See supra note 9. ___ _____ 18The same rationale would apply to MHFA's recovery of the $5,000 which the debtor advanced to retain bankruptcy counsel in an unrelated bankruptcy case. See supra note 2. ___ _____ 21 Forge Co., 154 B.R. 232, 235 (Bankr. N.D. Ohio 1993). Such a _________ retainer is precisely the same as the retainer fee paid Coopers & Lybrand; it never became part of the property of the debtor estate, and is subject to turnover only if it "exceeds the reasonable value of services rendered." See Bankruptcy Code  ___ 329(b); In re McDonald, 114 B.R. at 995-96, 1003 n.18; cf. also ______________ __ ____ Bankruptcy Code 548(a)(2), 11 U.S.C. 548(a)(2) (avoidance of prepetition "fraudulent" transfers where "insolvent" debtor "received less than a reasonably equivalent value in exchange for transfer").19  On the other hand, a "security" retainer is held by counsel to secure payment of anticipated legal services yet to be rendered. Under the ethical rules applicable in most jurisdic- tions, these monies remain property of the client until applied by counsel in payment of legal services actually performed. See ___ In re McDonald, 114 B.R. at 999; see also In re Saturley, 131 ______________ ___ ____ ______________ B.R. 509, 515 (Bankr. D. Me. 1991); In re Lilliston, 127 B.R. ________________ 119, 120 (Bankr. D. Md. 1991) (portion of prepetition retainer not earned prior to petition is property of estate); In re ______ Fitzsimmons Trucking, Inc., 124 B.R. 556, 558-59 (Bankr. D. Minn. __________________________ 1991) (same). In the instant case, the debtor's equitable "interest" in any unearned portion of the retainer, impressed  ____________________ 19Some courts have held that debtor counsel may use these two types of retainers without first filing a fee application under Bankruptcy Code 330. See, e.g., In re McDonald, 114 B.R. ___ ____ ______________ at 1002. In all events, these retainers remain subject to scrutiny under Bankruptcy Code 329 (debtor counsel must report all payments received for legal services). See also Fed. R. ___ ____ Bankr. P. 2017.  22 with MHFA's perfected lien, would have become property of the estate on the date the chapter 11 petition was filed, see Bank- ___ ruptcy Code 541(a)(6), and presumably would remain subject to a turnover order in a section 542 action brought by the debtor in possession. See In re McDonald, 114 B.R. at 1000 n.13 (citing In ___ ______________ __ re Gerwer, 898 F.2d 730, 734 (9th Cir. 1990)).  _________ Of course, if the $35,000 transfer constituted a "security" retainer, counsel would be required to file a section 330 fee application to withdraw the retainer. In re Burnside _______________ Steel Foundry Co., 90 B.R. 942, 945 n.1 (Bankr. N.D. Ill. 1988). _________________ MHFA could then object to debtor counsel's retention of any portion of the retainer not yet devoted to legal services which were "actual [and] necessary," see Bankruptcy Code 330, and the ___ bankruptcy court presumably could order debtor counsel to surren- der the unearned portion as "property of the estate." See id.  ___ ___ 105(a); 363(e); see also In re Westwood Plaza Apartments, 154 ___ ____ _________________________________ B.R. at 923 n.11.  We need not resolve the precise contours of the poten- tial bankruptcy court remedies available to MHFA against the debtor's law firm. Rather, it was MHFA's burden to demonstrate the unavailability of any alternative remedy for recovering its ______________ __ ___ collateral. See supra Section II.A.2. Even if the $35,000 ___ _____ retainer is not property of the chapter 7 estate, hence not subject to chapter 7 administration, MHFA has suggested no plausible basis for concluding that it cannot trace and recover the diverted collateral in a nonbankruptcy lawsuit directed 23 against the debtor's chapter 11 counsel (which is not protected by the automatic stay, see Bankruptcy Code 362) to foreclose ___ upon its prior lien on the rents. On the other hand, if the _____ ____ retainer remains property of the chapter 7 estate, MHFA may pursue its bankruptcy court remedies against the nondebtor _________ chapter 11 counsel. 3. Accounting Firm  3. Accounting Firm _______________ At oral argument, MHFA conceded that the debtor made its $25,000 prepetition payment to Coopers & Lybrand for audit services which were completed prior to the chapter 11 petition. _____ __ See supra Section I.A. Consequently, the debtor retained no ___ _____ legal or equitable "interest" in these monies as of the date of the chapter 11 petition; and no right to, or interest in, these monies ever became property of the chapter 11 estate. See ___ Bankruptcy Code 541(a)(6). MHFA could point to no conceivable basis upon which the bankruptcy court, at this point in time, could direct Coopers & Lybrand to turn over any part of its $25,000 retainer to the chapter 7 estate. See id. 542, 11 ___ ___ U.S.C. 542 (third party, in possession of property of estate, may be compelled to turn it over to trustee); United States v. ______________ Whiting Pools, Inc., 462 U.S. 198 (1983) (even a secured party in ___________________ possession of collateral constituting "property of the estate" is subject to 542 turnover order). Moreover, MHFA has suggested no other basis upon which either the debtor in possession or the chapter 7 trustee could have avoided the prepetition transfer to Coopers & Lybrand. See, e.g., id. 544 (avoidance of unper- ___ ____ ___ 24 fected liens), 545 (avoidance of statutory liens), 547 (avoidance of preferences), 548 (avoidance of fraudulent transfers). Moreover, the limitations period for any such avoidance action would appear to have lapsed. See id. 546(a)(1) (two years ___ ___ after order for relief); compare also In re Ollada, 114 B.R. 654, ____________ ____________ 655 (Bankr. E.D. Mo. 1990) ( 542 has no comparable limitations period) with In re De Berry, 59 B.R. 891, 898 (Bankr. E.D.N.Y. ____ _____ ________ 1986) ( 542 turnover motion must be made within "reasonable time").20  In all events, MHFA may have a direct cause of action against Coopers & Lybrand outside the bankruptcy court. Cf. In _______ ___ __________ _____ ___ __ re Indian Motocycle Assocs. III Ltd. Partnership, 161 B.R. at 868 ________________________________________________ ("[S]uch action . . . would involve only rights among nondebtors in a case having no prospects of reorganization [and] I have previously granted MHFA relief from [the automatic] stay."); see ___ generally In re McBee, 714 F.2d at 1326 (noting that perfected _________ ___________ security interest survives conveyance of collateral). The automatic stay afforded no protection to Coopers & Lybrand, see ___ Bankruptcy Code 362, and MHFA may seek to execute its perfected lien directly. At least this procedure would allay a troublesome aspect of the present case, in that Coopers & Lybrand has never received either notice or a hearing on MHFA's allegedly superior claim to the $25,000.   ____________________ 20The same rationale would appear to preclude an order compelling turnover of the $5,000 payment the debtor made to the principal of its managing general partner, which might otherwise have been voidable as a preferential transfer to an "insider." See Bankruptcy Code 547; see also supra note 2.  ___ ___ ____ _____ 25 III III CONCLUSION CONCLUSION __________ For the foregoing reasons, we decline MHFA's invitation to fashion extraordinary judicial relief under Bankruptcy Code  105(a), absent a showing that the judicial lawmaking it inevita- bly entails is either "necessary or appropriate to carry out" any provision of the Bankruptcy Code in the circumstances presented. Accordingly, we vacate the district court decision entitling MHFA to an order directing the debtor to turn over to the chapter 7 trustee the diverted MHFA cash collateral or its monetary equiva- lent. MHFA shall not be entitled to further relief in these chapter 7 proceedings, except on order of the bankruptcy court, after appropriate notice and hearing.  The district court order is vacated and the case is The district court order is vacated and the case is ___ ________ _____ _____ __ _______ ___ ___ ____ __ remanded to the bankruptcy court for further proceedings consis- remanded to the bankruptcy court for further proceedings consis- ________ __ ___ __________ _____ ___ _______ ___________ _______ tent with this opinion; costs to appellant. tent with this opinion; costs to appellant. ____ ____ ____ _______ _____ __ _________ 26